**BROOKFIELD CONSTRUCTION CO., INC., and Baylor Construction Corp. (A Joint Venture)**

*v.*

**The UNITED STATES.**

**No. 555–79C.**

United States Court of Claims.

Sept. 23, 1981.

Jon A. Kerr, Washington, D. C., atty. of record, for plaintiffs. Hudson, Creyke, Koehler, Tacke & Bixler, Washington, D. C., of counsel.

George M. Beasley, III, Washington, D. C., with whom was Acting Asst. Atty. Gen., Thomas S. Martin, Washington, D. C., for defendant. Raymond McCulloch, U. S. Army Corps of Engineers, of counsel.

James A. Pemberton, Jr., Washington, D. C., for amicus curiae, Associated General Contractors; King & King, Chartered, Washington, D. C., of counsel.

Before DAVIS, KASHIWA and SMITH, Judges.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DAVIS, Judge:

The Contract Disputes Act of 1978, Pub. L.No. 95–563, 92 Stat. 2383, 41 U.S.C. 601 *et seq.* (Supp. III, 1979)—in its summary transitional provision for the interim between, on the one hand, complete non-coverage by the new statute of government contracts, and, on the other, full prospective coverage for wholly new agreements made after the Act became law—presents numerous problems of interpretation.[1] These are transient, of course, but many of them are important for both contractors and Government. The present case falls into that class. It involves a pre-Act agreement and contract-claims filed with the contracting officer years before the March 1, 1979 effective date of the Act, but decided by the contracting officer after the Act went into operation. The several questions before us all concern interest on the claim-awards. The chief of these issues is whether a contractor which has elected to proceed under the Act may recover interest on its subsequently-allowed claims for periods of time prior to the effective date of the Act. We hold that the Act does not allow such retroactive interest, and that plaintiff's recovery is limited to simple, variable-rate interest running from the effective date of the Act (March 1, 1979) until December 13, 1979, the date of payment of the underlying claims.

### I

The case is here on cross-motions for summary judgment, and the facts are not in dispute. Under the 1965 contract on which this action is based, plaintiff joint venture[2] agreed to construct a hurricane barrier for the United States Army Corps of Engineers for the fixed price of $8,083,-075. During the course of construction (April 1965–October 1968) plaintiff experienced various changes, changed conditions and suspensions of work which eventually resulted in the submission of approximately 42 claims for equitable adjustments. Most of the claims were settled and paid, and modifications issued, before March 1, 1979. As of that date, no formal decision had been issued for seven claims. Oral agreement had been reached, however, on three of these claims before the March 1st effective date, but no final modification, memorandum of understanding, or other writing had been issued at that time due to an alleged lack of program funds to pay for the settlements. Final modifications settling all of the claims were executed in October 1979, and payment was made on December 13 of that year.

By letter of June 26, 1979, plaintiff's counsel informed defendant that it would seek interest under the Disputes Act on the amounts finally paid for all claims pending before the contracting officer on the March 1, 1979 effective date. The contract itself contained no interest provision.[3] The statutory interest claim was denied by the contracting officer in a final decision of August 28, 1979. Plaintiff timely appealed this decision and elected to proceed at once

---

1. This court's previous decisions on these problems include *Troup Bros. v. United States*, Ct.Cl. No. 64, 79, order of Aug. 24, 1979; *Monroe M. Tapper & Assoc. v. United States*, 222 Ct.Cl. ——, 611 F.2d 354 (1979); *Warwick Constr., Inc. v. United States*, 650 F.2d 289, 1980; *Wheeler Bros. v. United States*, Ct.Cl., 650 F.2d 291, 1980; *Folk Constr. Co. v. United States*, Ct.Cl. No. 99–80C, order of Jan. 16, 1981; *Gregory Lumber Co. v. United States*, Ct.Cl. No. 428–80C, order of March 27, 1981; *Paragon Energy Corp. v. United States*, 227 Ct.Cl. ——, 645 F.2d 966 (1981); *Nat'l Elec. Coil v. United States*, Ct.Cl. No. 79–80C, order of March 17, 1981; *Everett Plywood Corp. v. United States*, 227 Ct.Cl. ——, ——, 651 F.2d 723, 733–34 (1981); *Tuttle/White Construc-* *tors, Inc. v. United States*, Ct.Cl., 656 F.2d 644, 1981.

2. The joint venture is composed of Brookfield Construction Co., Inc. and Baylor Construction Corporation. We shall call it Brookfield-Baylor.

3. The contract was awarded prior to the use of the standard "Payment of Interest on Contractor's Claims" clause, ASPR 7.104.82 (1972) (32 C.F.R. § 7.104–82 (1973)) which allowed interest on the amount finally determined to be due, from the date a written appeal to a board is furnished to the contracting officer until final judgment is rendered on the claim or a settlement is reached.

to this court under the Disputes Act's "direct access" provision, 41 U.S.C. § 609(a)(1) (Supp. III 1979). A petition was filed here in December 1979, seeking interest only. These cross-motions for summary judgment followed.

## II

There is no doubt (and it is conceded) that, at least as to four of its seven claims unpaid on March 1, 1979, Brookfield-Baylor had the statutory right to proceed under the Disputes Act. Those claims were fully outstanding on that date, and no contracting officer's decision of any kind was made until a later time. Section 16 of the Act provides that:

This Act shall apply to contracts entered into one hundred twenty days after the date of enactment [November 1, 1978]. Notwithstanding any provision in a contract made before the effective date of this Act [March 1, 1979], the contractor may elect to proceed under this Act with respect to any claim pending then before the contracting officer or initiated thereafter. [41 U.S.C. § 601 (note).]

On June 26, 1979, plaintiff made such an election.

■ We begin with the most significant question in the case—whether a pre-Act contractor properly electing to proceed under the Disputes Act is entitled to interest on those pre-Act claims from the time the claims were made to the contracting officer (before the Act became effective). For its affirmative answer, plaintiff rests, first, on the proposition that, once the Act is properly invoked by a pre-Act contractor on pre-Act claims, every provision of the Act must be applied to that contractor as if this were a post-Act contract, and, second, on the Act's specific provision giving interest on

claims from the time when the contracting officer receives the claim pursuant to the Act (section 12 of the Disputes Act, 41 U.S.C. § 611).[4]

The first of these contentions has already been rejected outright by the court in the broad form plaintiff (and amicus) put it. In both *Folk Construction Co.* and *Gregory Lumber Co., supra,* note 1, we refused to apply the Act's certification requirements to pre-Act claims which the contractors properly brought here under the "direct access" part of the Act.[5] Those rulings show that there can be no mechanical application of each and every provision of the Act to contractors who elect under section 16, *supra.* The purpose, scope, and meaning of the particular provision must be examined to see its reach and effect on pre-Act claims. That is what we did in *Folk* and *Gregory,* and what we must do here. This principle of specific examination is consistent with section 16, *supra,* which says no more than that the electing contractor "may elect to proceed" under the Act, and does not clamp down the precise application of any specific part of the Act to pre-Act claims or pre-Act contracts.

The inquiry then becomes one of the scope, meaning and reach of the Act's interest stipulation, section 12 (note 4, *supra*). Brookfield-Baylor invokes the "plain" language of the provision as decisively showing that, for electing contractors, interest goes back to the pre-Act time the contracting officer received the claim. But we do not find the language very helpful for the current problem. It has been said that, when section 12 declares that interest runs from the date the contracting officer receives the claims "pursuant to section 6(a)" (note 4, *supra*), this proves that interest cannot go back prior to March 1, 1979 because the

---

4. Section 12 provides for the payment of interest on amounts found due contractors "from the date the contracting officer receives the claim pursuant to section 6(a) from the contractor until payment thereof." Section 6(a), 41 U.S.C. § 605(a), requires that contract claims "shall be in writing and shall be submitted to the contracting officer for a decision."

5. The full court refused to entertain both of those cases *en banc* (order of March 6, 1981, refusing rehearing *en banc* in *Folk Construction Co.;* order of March 27, 1981, refusing initial hearing *en banc* in *Gregory Lumber Co.*).

whole Disputes Act, together with section 6(a), did not exist before then, and the contractor's pre-Act claims could not have been received "pursuant to section 6(a)." *Woods Hole Oceanographic Institute v. United States*, Civil Action 79–1514–MA, (D.Mass., Dec. 19, 1980), slip op. at 9. One need not accept this point as controlling the issue of pre-Act interest in order to acknowledge that the position does show that section 12 has a definite aura of ambiguity and is not "plain" on its face in plaintiff's favor.

Nor is plaintiff helped by the Act's legislative history. There is no indication that Congress ever recognized that the Act could be construed as imposing pre-Act interest liability—nor any indication to the contrary. The history is wholly silent on this point. *See, generally*, S.Rep.No. 95–1118, 95th Cong., 2d Sess., *reprinted in* [1978] U.S.Code Cong. & Ad.News 5235 (Senate Report). Congress clearly thought that contractors should be allowed interest prospectively, but there is no expression in the history bearing, one way or the other, on the retroactive imposition of interest for periods prior to the effective date of the statute. Everything that Congress had to say bearing on interest, in its reports and debates,[6] could be the same, word for word, if the legislative intention had been to make interest awardable only for periods after the Act's effective date.

In these circumstances—almost no affirmative guidance from Congress on the issue—the weightiest factors, in our view, are these: (a) the very large liability that would be imposed on the Government, unacknowledged in the legislative history, for pre-Act statutory interest; (b) the objectives and purposes of the Act's interest provision; and (c) the traditional attitude cautioning against imposing nonconstitutional interest on the Government if the mandate is not clear.

It seems almost certain that the allowance of retroactive statutory interest (*i. e.* prior to March 1, 1979) would amount to a large additional sum.[7] Plaintiff's claims go back to the 1960's and early (or middle) 1970's. It seeks upwards of one million dollars in interest, most of it for pre-Act periods. Defendant has given us an affidavit declaring that the Corps of Engineers, alone, had some $214 million in contract claims pending against it on March 31, 1979, and that the average age of those claims might be about 2 years.[8] The Corps of Engineers is but one of many federal procurement agencies governed by the Disputes Act—and not the most important one—and we have no doubt that many of the other agencies would have comparable or greater back-logs, and a large liability for back-interest, if such interest were to be allowed.

The Supreme Court, however, has cautioned against "reading a statute to impose liability on the Federal Government, where 'the liability would mount to great sums,'

---

**6.** The same is true of the discussions and recommendations, on interest, of the Commission on Government Procurement.

**7.** Prior to the enactment of the Disputes Act there was no statutory provision for interest on government contract claims. A contract provision permitting interest was not adopted until 1972; and, even then, permitted interest only for the period after the contracting officer's decision was issued. *See* note 3, *supra*. This was, of course, a very limited contract provision, not at all comparable to section 12 in its scope. As we have pointed out (*see* note 3, *supra*), even that contractual interest clause was not included in plaintiff's contract which was awarded some seven years before the limited-interest clause was routinely included in government procurement contracts.

**8.** Plaintiff has moved to strike this affidavit as irrelevant and inadmissible, but we deny that motion because the material in the affidavit is relevant, not in determining any fact peculiar to this case, but for the general purpose of construing the meaning of the Contract Disputes Act of 1978.

Brookfield-Baylor also moves to strike the affidavit of Raymond C. McCulloch, detailing alleged delays by plaintiff in the prosecution of its particular claims. We have not considered this affidavit because in our view the pre-Act delays for which plaintiff may or may not be responsible are irrelevant. We therefore deny the motion to strike as in effect moot because directed to an affidavit which has no part in our decision.

unless the words (or intent) are plain." *Schellfeffer v. United States,* 170 Ct.Cl. 178, 187, 343 F.2d 936, 942 (1965), citing *Pine Hill Coal Co. v. United States,* 259 U.S. 191, 196, 42 S.Ct. 482, 483, 66 L.Ed. 894 (1922). *See also United States v. Zazove,* 334 U.S. 602, 616–17, 68 S.Ct. 1284, 1290–91, 92 L.Ed. 1601 (1948). As we have already stressed, Congress "nowhere specified [or recognized in connection with the Disputes Act] that the United States would bear the huge cost of the enhanced liability that it would necessarily have anticipated" (*id.*) had it thought the Act had the meaning plaintiff finds there. On the contrary, the Congressional Budget Office stated, with reference to the costs of the Act as a whole,[9] that "it appears that no additional cost to the government would be incurred as a result of enactment of this bill." Senate Report, *supra* at 36, [1978] U.S.Code Cong. & Ad. News at 5270.[10] Congress's "striking omission" to consider this "enhanced liability" "is persuasive, in the absence of cogent considerations to the contrary, that no generosity of this magnitude was contemplated." *See United States v. Zazove, supra,* 334 U.S. at 617, 68 S.Ct. at 1291.

■ The second element on which we rely is that the allowance of pre-Act interest would not serve all the significant reasons for the interest provision in section 12.

True, Congress definitely thought it fair and proper to grant interest to contractors as a "legitimate cost" of performance.[11] But another essential policy for the allowance of interest was its "beneficial effect in providing additional inducement for the settlement of claims short of litigation," *Summary of the Report of the Commission on Government Procurement* 94 (1972), a primary goal behind the enactment of the Disputes Act. *See* Senate Report *supra* at 1, 1978 U.S.Code Cong. & Ad.News at 5235; H.R.Rep. No. 1556, 95th Cong. 2d Sess. 18 (1978) (House Report). *See also, Contract Disputes Act of 1978: Joint Hearings before the Subcommittee on Federal Spending Practices and Open Government of the Committee on Governmental Affairs and the Subcommittee on Citizens and Shareholders Rights and Remedies of the Committee on the Judiciary, United States Senate, on S. 2292, S. 2787, S. 3178,* 95th Cong. 2d Sess. 385, 390 (June 14 and 20, 1978) (letter from Honeywell Inc. recommending, *inter alia* that interest be allowed on claims from the date of submission to the contracting officer since interest would serve as a catalyst and expedite claim submission, processing, and settlement.) [12]

This important legislative purpose of allowing interest is not facilitated in any way by awards of pre-Act interest. The specter

---

9. In reviewing the bill under section 403 of the Congressional Budget Act of 1974.

10. Of course, interest was to be allowed prospectively, but the Congressional Budget Office may have thought that this additional prospective liability for interest would not be great in view of the bill's efforts to expedite the determination of future contract claims, as well as the existing, limited clause allowing contract interest after the contracting officer's decision (*see* notes 3, 7).

11. Congress followed the recommendation of the Commission on Government Procurement (Vol. IV, *Report of the Commission on Government Procurement,* at 29, Recommendation 11). *See* Senate Report No. 95–1118, *supra,* at 32, [1978] U.S.Code Cong. & Ad.News at 5266. We repeat that nothing in the Commission's Report or the congressional history applies this purpose to pre-Act interest, any more than the Act was applied at all to claims decided by the contracting officer prior to March 1, 1979.

12. This use of interest to encourage prompt disposition of claims is also reflected in the Senate Report discussing an earlier version of section 12 which allowed interest from the date the claim accrued. That report stated that "[a]dministrative judges in the agency boards and trial judges at the Court of Claims must be very sensitive when fixing a date from which to start interest charges not to allow undue delay in * * * notification * * * to be of a benefit to the contractor. The contracting officer should know of the claim in a reasonable amount of time * * * *so as to give the contracting officer * * * the opportunity to act so as to limit the dollar exposure in interest.*" Senate Report, *supra* at 32, [1978] U.S.Code Cong. & Ad.News at 5266 (emphasis added). While the date interest begins to run was later amended, *see* Cong.Rec.S. 18641 (daily ed. Oct. 12, 1978), Congress' concern to limit exposure to interest remained a significant goal.

of interest payments could not have served as a catalyst or warning to the contracting officer to expedite his proceedings as much as possible (and thus limit exposure to interest) since in pre-Act days contracting officers were not aware that any interest would have to be paid. Rather, because there was, in pre-Act times, no monetary incentive, or legal requirement, on the contracting officer to expedite his consideration of claims, the imposition of interest retrospectively would be to cast an interest burden on the Government which its officials had at the time no reason to consider, to reduce, or to guard against.

Along these same lines, we note that the Act's time limits (the dates by which certain phases of the disputes process have to be completed) were not in effect and thus could not serve as delay deterrents with respect to pre-Act claims. These deadlines were specifically included in the Act as a response to concerns over past delays in the process of resolving claims. *See* House Report, *supra* at 18. It would not further this congressional purpose (to establish deadlines for the future) to apply the interest provision to pre-Act periods; obviously, the parties were not then aware of or bound by any statutory mechanism designed to speed up the process (so as to restrict and control the extent of interest liability).[13] Conversely, pre-Act interest is likely to be inflated because contracting officers then had no deadlines to spur them.

■ Denial of pre-Act interest also harmonizes with the "long-established, deeply-imbedded principle that interest is not allowed on monetary claims against the Federal Government unless Congress (or a contract) plainly authorizes such an addition * * *." *Blake v. Califano*, 626 F.2d 891, 893 (D.C.Cir. 1980). This "entrenched immunity" is a part of sovereign immunity. *United States v. New York Rayon Import-*

*ing Co.*, 329 U.S. 654, 658–59, 67 S.Ct. 601, 603, 91 L.Ed. 577 (1947). Because there can be no award of interest against the United States in the absence of a "contract [a provision not applicable here] or Act of Congress expressly providing for payment thereof," 28 U.S.C. § 2516(a) (1976), the only way plaintiff can recover interest is if the Contract Disputes Act provides for it. *Cf. United States v. Mescalero Apache Tribe*, 207 Ct.Cl. 369, 388, 518 F.2d 1309, 1322 (1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). While section 12 does expressly provide for the recovery of interest prospectively, pre-Act interest is not included within the express (or in our view implied) terms of that section. *See* our discussion *supra*. "[T]here is nothing to indicate that Congress affirmatively intended" interest for pre-Act periods. *See Blake v. Califano, supra*, 626 F.2d at 894. In the light of the precept that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied," *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957), we should not expand the boundaries of section 12 to cover territory not necessarily or clearly included within its terms and perimeters.[14]

■ In opposition, plaintiff calls upon the canon that remedial legislation should be liberally construed to advance the remedy of the evil or injustice Congress sought to alleviate. *See Lykes Bros. S.S. Co. v. United States*, 206 Ct.Cl. 354, 375, 513 F.2d 1342, 1353 (1975). Section 12 is obviously remedial in nature, *see* Senate Report *supra* at 32, 1978 U.S.Code Cong. & Ad.News at 5266, but that alone is insufficient to overcome the strong contrary reasons for denying it retroactive pre-Act application. As we have emphasized, there is no good reason to believe that Congress wanted to remedy

---

**13.** No one, so far as we know, contends that these statutory time limits should be retrospectively applied to pre-Act determinations of contracting officers so as to invalidate those which failed to adhere to the later-enacted time limits. Plainly, the entire Act cannot be automatically applied retrospectively to the claims of electing contractors.

**14.** In this connection, *see also* our discussion *infra* (Part III), of the principle disfavoring retroactivity of statutes in the absence of a clear indication to the contrary.

any pre-Act injustice stemming from inability to recover interest. *See Monroe M. Tapper & Assoc. v. United States,* 222 Ct.Cl. ——, ——, 611 F.2d 354, 360 (1979). This is therefore not a case in which the statutory purpose definitely extends to past transactions as well as the future. That being so, the prospective remedial objective of section 12 is outweighed by the contrary policies we have spelled out.[15]

### III

■ The Government goes further and urges that no interest at all is recoverable, even after the March 1, 1979 effective date of the Act, because none of the claims was certified pursuant to section 6(c)(1) of the Disputes Act, 41 U.S.C. § 605(c)(1).[16] With respect to the underlying claims in this case, which were all submitted prior to March 1, 1979 (and have already been paid), a similar contention was squarely rejected in *Folk Construction Co. v. United States, supra,* Ct.Cl. No. 99–80C (order of Jan. 16, 1981), *reh'g denied* (order of March 6, 1981), and *Gregory Lumber Co. v. United States, supra,* Ct.Cl. No. 428–80C (order of March 27, 1981). In those cases, the contractor sought to take advantage of the Act's "direct access" provision, allowing suit directly in this court after a contracting officer's adverse decision, without certifying their pre-Act claims. The court ruled in those decisions that, when a contracting officer renders a decision after the effective date of the Act on an uncertified claim submitted prior to that date, the contractor may proceed here under the Act without having to certify.

*Folk* and *Gregory* are, of course, binding on this panel, and we have no occasion to doubt those rulings or to ask the full court to hear the question.[17] Insofar as defendant says that the underlying claims should have been certified by plaintiff, those rulings are dispositive. The text and history of the Act show no tie-in between certification of the underlying claims and the payment of post-Act interest on pre-Act claims.[18]

Moreover, the normal warning against reading unclear legislation to apply retroactively (*See Sea-Land Service, Inc. v. United States,* 204 Ct.Cl. 57, 78, 493 F.2d 1357, 1369, *cert. denied,* 419 U.S. 840, 95 S.Ct. 69, 42 L.Ed.2d 67 (1974)) governs here. "Congress is presumed to have intended statutes or amendments to operate prospectively unless there is clear statutory expression or legislative history to the contrary." *Sea-Land Service, supra,* at 78, 493 F.2d at 1369. In this instance there is neither "clear statutory expression or legislative history" supporting a retroactive application of the Act's certification requirements to pre-Act claims filed when those requirements were not in the law.[19]

As for the post-Act interest claim itself (distinguished from the underlying claims), no certification is necessary even though we assume *arguendo* that that claim was

---

**15.** See our analogous decision refusing retroactive application to pending cases of the attorney's fee provision of the Civil Service Reform Act of 1978, 5 U.S.C. § 552 *et seq.* (Supp. III 1979). *Nibali v. United States,* 225 Ct.Cl. ——, 634 F.2d 494 (1980). There, as in the current case, the statutory language and history gave little guidance but the purpose of adding the provision for attorney's fees was admittedly remedial. Nevertheless, retroactivity was not allowed.

**16.** This subsection provides that:
"[f]or claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which

the contractor believes the government is liable."

**17.** As noted, note 5, *supra,* the full court declined to hear both of those cases *en banc.* So far as we can tell, the arguments made here are substantially those made in *Folk* and especially *Gregory.*

**18.** It is interesting, though of course not dispositive, that a recent post-Act House Committee report appears to reject such a tie-in for the calculation of interest. *See* H.R.Rep. No. 47, 97th Cong., 1st Sess. 3 (1981).

**19.** We do not reach the different issue of the extent to which a contractor may recover interest on uncertified underlying claims which are submitted *after* the Act's effective date.

presented after March 1, 1979. Once the amounts for the underlying claims are set, the determination of the amount of post-Act interest is objective, legal, and mathematical, not lending itself to certification nor serving any of certification's fraud-preventive goals. It would be needless, redundant, and overly-technical to require certification of that interest claim.

## IV

Defendant's remaining argument for completely barring interest goes to three of plaintiff's claims—those on which an oral agreement was reached prior to March 1, 1979. While these claims were verbally settled before the Act's effective date, the formal written document setting forth the amounts agreed upon was not issued until October 1979. This delay was due to the then unavailability of program funds from which payment could be made.

██ When a claim has been settled and a written settlement agreement or contract modification embodying that settlement has been issued as a final contracting officer's decision, the claim is no longer pending before the contracting officer. *See Monroe M. Tapper & Assoc. v. United States, supra,* 222 Ct.Cl. ——, ——, 611 F.2d 354, 357–59 (1979); *Troup Bros. v. United States,* Ct.Cl. No. 64–79 (order of Aug. 24, 1979). But that is not the situation here. The critical distinction is the lack of a pre-Act final written decision implementing the oral agreements. Before he has issued such a formal decision, the contracting officer has not taken all the steps required of him in order to complete his function in the disputes process, *see* section 6(a), 41 U.S.C. § 605(a) and the standard disputes clause, and the claim is therefore still pending before him until he does so.

In this case that did not occur until after the effective date of the Act and therefore the orally-settled claims were still "pending" before the contracting officer for pur-

poses of section 16 on March 1. That official could have issued a written decision at the time of settlement but chose not to do so as a matter of the Government's convenience. The Government cannot take such an action for its own benefit and then later seek to ignore its consequences.[20] We think, moreover, that it accords better with the Disputes Act's aim to establish a definite date for eligibility-to-elect-to-proceed under that Act to construe the phrase in section 16, *supra*—"claim pending then before the contracting officer"—as calling for a definitive written determination by the contracting officer before a claim can be said to be no longer "pending." Otherwise, the trigger of section 16 could be subject to troublesome disputes over whether a complete oral settlement of a claim had or had not been previously reached.

Our decision does not detract from the binding nature of oral settlements in contract dispute situations. *See Kurz & Root Co. v. United States,* ASBCA No. 17146, 74–1 BCA ¶ 10,543 at 49,942 (March 18, 1974) (*see* Ct.Cl. 652 F.2d 69 (1981)); *Penn-Ohio Steel Corp. v. United States,* 173 Ct.Cl. 1064, 1085–86, 354 F.2d 254, 266–67 (1965), and cases cited. The problem here is not whether the oral settlement agreements were binding on the parties—it is the separate issue whether, for the particular purposes of section 16 of the Disputes Act, such agreements automatically remove a claim from "pending" status. Those oral agreements are still binding, but the needs of section 16 are better served by the definitive, rarely disputable, act of a written determination by the contracting officer.

All of the rulings on which the Government relies involved claims for which a formal contract modification or other decision by the contracting officer had been rendered prior to March 1, 1979. *See, e. g., Wheeler Bros. v. United States,* Ct.Cl., 650 F.2d 291 (1980); *New York Shipbuilding Co.,* ASBCA No. 19438, 80–1 BCA ¶ 14,388

**20.** Two of the claims were settled in January 1979 and the other in the fall of 1978. At least as to the January settlements and possibly as to the one in the fall of 1978, defendant was aware of the Act's provisions relating to pending claim and interest terms, since the Act was actually enacted 120 days (November 1, 1978) before its March 1st effective date.

at 70,955 (Mar. 17, 1980). Indeed, in *Monaco Enterprises, Inc.*, ASBCA 24110, 80–1 BCA ¶ 14,282 (Feb. 12, 1980), the board found the claim to be finally settled (and thus no longer pending) on the date of the writing formalizing the settlement agreement (February 16), rather than the earlier date upon which an oral agreement was negotiated (February 15).

By the same token we are not persuaded that plaintiff's attempt to recover post-Act interest on its orally-settled claims is the equivalent of a suit for prohibited late-payment damages rather than one for interest on a disputed claim. Brookfield-Baylor asks here for whatever statutory interest it can have on its claims, and section 12 (after it became effective) orders payment of interest "until payment." That period must include time due to delay in payment. *A.L.M. Contractors, Inc.*, ASBCA No. 23792, 79–2 BCA ¶ 14,099 (Aug. 31, 1978), is quite different. There was no dispute over the amount of the underlying claim due that claimant; the claim for interest was based solely on the government's delay in making payment. *Id.* at 69,357–58. The Board held that neither the contract interest clause nor the Act affected the prohibition against recovery of interest for delay. *Id.* But in *ALM* there was no "claim" because there was never a dispute over entitlement to the underlying payments, while in the current case the "claims" were in fact disputed—they were truly "claims"—and thus remained "pending claims" until the written decision covering them was issued in October 1979.

## V

Having decided that interest on plaintiff's claims cannot extend backward beyond the effective date of the Act (*see* Part II, *supra*), we must face the puzzling issue of the time from which post-Act interest should run. The viable alternatives are March 1, 1979, the effective date of the Act, or the later date of Brookfield-Baylor's election to proceed under the Disputes Act.[21]

■ There is no certain answer but we think that the preferable rule starts interest from the Act's effective date for all claims eligible under section 16. That section (reproduced at the beginning of Part II, *supra*) requires that a contractor, if it wants to "proceed" under the Disputes Act, must make that choice. But section 16 does not indicate when—once the election is made—interest begins to run on a claim; the wording of the section does not compel either of the alternatives before us, but rather permits both. Selection of the time for commencing interest must depend on the general structure and purpose of the Act, as well as the role of the pre-Act contractor's election to proceed under the Act.[22]

It is useful to start with the instance of a claim properly received by a contracting officer on March 1, 1979, even though the contract was pre-Act and the election to proceed under section 16 was made sometime after March 1st. Such a claim would plainly lie within the bare language of section 12—unless one accepts the hyper-technical argument that, though the Act was then fully in effect, the contracting officer was still not receiving the claim "pursuant to section 6(a)" because the contractor had not yet made his election under section 16 to proceed under the Disputes Act. For such a claim filed on March 1st, none of the reasons (discussed in Part II, *supra*) that impel us not to allow interest for periods

---

**21.** Defendant argues, somewhat softly, that the language of section 12—"from the date the contracting officer *receives* the claim pursuant to section 6(a)" (emphasis added)—is phrased in the present tense because Congress intended it to apply only to post-March 1 *claims* (which would of course be received "pursuant to section 6(a)"). We reject this thin semantic argument as contrary to the declaration in section 16 that all eligible pre-Act contractors can proceed under the new Act. Nothing in the legislative history suggests that the interest provision is not to apply prospectively once the Act became effective, to all proper electors under section 16. Nor is there any indication that the use of the present tense—"receives"—was designed to have anything to do with the problem now confronting us.

**22.** There is no help in the legislative history.

prior to the Act would have much weight against the strong, affirmative Congressional indication that interest should be allowed after the Act became operative. The election to proceed under the Disputes Act is critical, but the actual date of the election has no realistic relevance to this matter of prospective interest. The Act itself was already fully operative and the allowance of interest from its effective date would not contravene its language or its policy. Particularly for post-Act claims it would much over-inflate the importance of the actual election-date to rule that interest was to be paid only from that date.

We see almost no difference, on this point, between the case of a claim filed on or after March 1st and plaintiff's claims which antedated the Act. Section 16 treats them fully alike by making the flashpoint the pendency of the claim before the contracting officer on March 1st "or initiated thereafter." Once pre-Act interest is forbidden for plaintiff (see Part II, supra) there are no substantive differences as to post-Act interest. Both types of contractors are explicitly permitted to proceed under the Act. The only difference we see is that it is somewhat easier to fit the March 1st (or post-March 1st) claim into the literal framework of section 12 (because the Act was already in effect when that claim was filed), but this textual problem is not overwhelming [23] in the face of Congress' emphatic policy to allow interest prospectively.

From the other side of the looking-glass, the argument favoring the time of election is that technically it perhaps meshes somewhat better with the literal wording of sections 12 and 16 of the Act. There are, however, no reasons grounded in policy for adopting it, and it makes too much depend on the fortuitous date on which the contractor wakes up to section 16 and chooses to make its election.[24] Congress, as we have said, considered the *fact* of election to be crucial, but we have grave doubt that Congress put much stress on the *date* of election or wanted important consequences pinned to it. Textually, section 16 does make critical the fact of election but it has no guidelines at all on the manner or time of election.[25] The contractors likely to be harmed most by a rule tying interest to the date of election are those who were uncertain or dilatory in the months after March 1, 1979. For the future, if we adopted that rule, all contractors still with pre-Act contracts would be wise to file broad-scale elections immediately (whether or not their claims were decided) in order to protect their statutory right to interest from the earliest moment.

Though the Government prefers interest to run from the date of election, it does not object strongly to March 1, 1979 (if an election is made). We adopt the latter position for the reasons we have stated and because of Congress' general desire to allow interest for the future once the Disputes Act went into effect.

## VI

Under section 12 of the Contract Disputes Act, interest is to be paid "at the rate established by the Secretary of the Treasury pursuant to Public Law 92–41 (85 Stat. 97) for the Renegotiation Board." 41 U.S.C. § 611. The rate established by the Secretary under the Renegotiation Act (now expired) was based on "current private commercial rates of interest for new loans maturing in approximately five years," 50 U.S.C. App. § 1215(b)(2) (1976), and was adjusted as necessary at six month intervals. *Id.* Although for renegotiation

---

**23.** Once the Act became effective, section 12 can be read as immediately mandating interest (if an election is later made) to the extent that pre-Act interest is not prevented by the factors we have previously discussed in Part II, *supra*. It is undisputed that plaintiff's claims were filed in writing and were received by the contracting officer. If filed on or after March 1st, they would have been proper under the Act.

**24.** We have already decided (*see* Part III, *supra*) that, at least for claims filed before March 1st, the contractor need not certify the claim in order to proceed under the Disputes Act.

**25.** This is to say nothing about disputes as to when the election was made—a problem which has surfaced in some of our cases. *E. g. Tuttle/White Constructors, Inc. v. United States, supra*, Ct.Cl., 656 F.2d 644 (1981).

cases the interest rate in effect when the Board made its decision applied until excessive profits were eliminated, there is no reason to think that Congress intended that result in the Contract Disputes Act. We read the language of section 12 as requiring, rather, that the rate of interest to be applied initially will be the Treasury rate then in effect, and that this rate will rise and fall in concert with any changes in effect for subsequent six month periods.

This interpretation (which is urged by both parties) conforms with the simple statutory text and is more consistent with the legislative intent behind section 12 than is a fixed rate for the whole interest period. Congress enacted section 12 because, among other things, it recognized that the cost of money necessary to finance additional or disputed work while pursuing an administrative remedy (often referred to as interest) was a legitimate cost for which the contractor should be compensated. *See* Senate Report, *supra*, S.Rep.No. 95–1118, 95th Cong., 2d Sess. 32, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5266. This objective can be most fairly and fully met if compensation accords with the actual costs of money.[26]

Interest on plaintiff's claims will therefore be computed in accordance with the applicable six month Treasury rates from the effective date of the Act (March 1, 1979) until the date of payment, December 13, 1979, and will be based on simple, not compound, interest.[27]

### Conclusion

Both parties' motions for summary judgment are granted in part and denied in part

---

**26.** *See* H.R.Rep. No. 47, 97th Cong., 1st Sess. (May 18, 1981), on a bill (passed by the House of Representatives) to delete the reference in section 12 to the Renegotiation Board and to continue the requirement for the periodic setting of interest rates. The Report, considering this to be a clarification or restatement of existing law, declares that the rate will change for each six months period during the pendency of the claim when a different rate is fixed.

**27.** There is no support for the award of compound, rather than simple, interest under the Disputes Act. The general rule is that even where, as here, a statute requires the payment

as this opinion indicates, and the case is remanded to the Trial Division under Rule 131(c) for computation of interest recoverable by plaintiff, in accordance with this opinion.

of interest, "only simple interest is intended and compound interest cannot be awarded against the Government." *United States v. Mescalero Apache Tribe, supra,* 207 Ct.Cl. 369, 406–07, 518 F.2d 1309, 1331–32 (1975), *cert. denied,* 42 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). *And see, Select Contractors, Inc.,* ENGBCA Nos. 3855, 3919, 79–2 BCA ¶ 14,155 at 69,684 (Oct. 29, 1979) (simple interest awarded under "Payment of Interest on Contractor's Claims" clause). There is no suggestion in the Act that Congress intended to alter this traditional rule.