**NORMAN M. GILLER & ASSOCIATES**

v.

**The UNITED STATES.**

No. 224–74.

United States Court of Claims.

May 12, 1976.

---

Mattaniah Eytan, Washington, D. C., for plaintiff. Julius Kaplan, Washington, D. C., attorney of record. Kirkwood, Kaplan, Russin & Vecchi, Washington, D. C., of counsel.

Marc J. Fink, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and DAVIS, Judge.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

DURFEE, Senior Judge.

This Wunderlich Act[1] review case concerns the entitlement of a sole proprietor of a cost-plus-fixed-fee contractor and his spouse to constructive compensation for administrative services rendered in conjunction with a service contract, and first claimed after the termination of the contract.

Norman M. Giller & Associates, a professional architectural and engineering firm and a sole proprietorship owned and managed by Norman M. Giller individually, contracted on a cost-plus-fixed-fee basis with the Agency for International Development (AID) to provide various architectural and engineering services on several AID projects in the Republic of Panama. The contract provided that plaintiff would be reimbursed for its direct base salary costs of its employees in both its Florida home

---

1. 41 U.S.C. §§ 321, 322 (1970).

office and its Panama field office in accordance with cost provisions appended to and expressly incorporated in the parties' contract. Plaintiff's indirect (overhead) costs were to be reimbursed at 35% of its Panama direct contract costs and 50% of its home office direct contract costs. The parties' contract began in March 1962 with an estimated completion period of two years. Subsequent contract amendments extended the contract completion period to April 1966 with plaintiff's final report on the project submitted in May 1967.

Following expiration of the contract, AID conducted a final post-contract audit of plaintiff's costs under the contract. From this audit, defendant computed the amounts due plaintiff under the contract for both its direct and indirect costs and reimbursed plaintiff the outstanding amounts owing calculated pursuant to its final contract audit report.

Plaintiff protested defendant's final audit calculations claiming additional indirect costs reimbursable under the contract in the amount of $247,583. Of this amount, plaintiff claimed $79,685 as contractually allowable but unreimbursed overhead costs and $167,898 as constructive compensation for the administrative services performed by Mr. and Mrs. Giller for plaintiff during its performance of the contract. The claimed amounts had their genesis in a private professional audit of plaintiff's contract performance commissioned following plaintiff's dissatisfaction with the results of defendant's final audit report, and the Contracting Officer's refusal to make any adjustment in the Government's final audit report.

Plaintiff's private accountants conducted a thorough and comprehensive audit of plaintiff's contract performance. Concurrent with this audit, plaintiff's accountants converted plaintiff's books from a cash basis to an accrual basis. As part of their audit analysis, plaintiff's accountants added as an indirect contract expense an amount as constructive compensation to the Gillers for their administrative services for plaintiff during its activity under the contract and project.

During plaintiff's contract performance, Mr. Giller, as plaintiff's sole proprietor, drew no salary for his efforts on behalf of the firm. Mr. Giller performed largely administrative functions and ran the firm as opposed to doing actual professional architectural or engineering work. Mr. Giller did charge defendant for the small amount of engineering work he did perform on the contract. Mrs. Giller performed office "administrative work" and ran the firm in Mr. Giller's absence. Mrs. Giller drew no salary for the performance of these duties during the life of the contract. Plaintiff's books carried no entries for compensation to the Gillers for administrative work performed on behalf of the firm.

On presentation of plaintiff's private auditors' report, and the testimony of plaintiff's accountant to the Armed Services Board of Contract Appeals (Board) as part of plaintiff's appeal from the Contracting Officer's refusal to make adjustments to the Government's final audit report, the Board allowed plaintiff's claim for $79,685 in unreimbursed indirect contract costs. The Board denied, as an imaginary expense, plaintiff's claim for constructive compensation for the Gillers' performance of administrative services during the parties' contract. The Board concluded that " * * * the constructive compensation is unallowable as representing nothing actually paid, nor any company obligation charged or incurred." 73–1 BCA ¶ 10,016 p. 47,014.

In this action, plaintiff appeals the Board's denial of its constructive compensation claim. Originally, defendant sought to counterclaim for recovery of the $79,685 awarded plaintiff by the Board. After review of the administrative record, defendant retreated from this position and presently bases its defense solely on the validity of the Board's determination denying plaintiff's constructive compensation claim.

In their respective motions for summary judgment neither party disputes the Board's factual determinations which have been summarized above from the Board's reported decision. *Norman M. Giller & Associates,* ASBCA No. 14696, 73–1 BCA ¶ 10,-

016. Thus the sole issue before the court is the legal validity of the Board's denial of plaintiff's constructive compensation claim. For the reasons set forth below the Board's decision is sustained and defendant's summary judgment motion granted.

■ As its lead argument that the Board erred in denying plaintiff's constructive compensation claim, plaintiff contends that the Gillers should be compensated for their administrative services on commonsense principles relating to sole proprietorships because there is no sound business accounting method by which Norman M. Giller & Associates could have paid its sole proprietor, Norman M. Giller, a salary. This argument rests on the false assertion that a "sole proprietor cannot pay himself a salary." (Pltf's brief p. 14). This argument for which plaintiff tellingly provides no authority is both contrary to the decisions of the Board from whence plaintiff appeals and the Cost Principles applicable to plaintiff's contract.

In *Howard F. W. Taylor,* ASBCA No. 2876, 57–1 BCA ¶ 1204, the Armed Services Board of Contract Appeals allowed a proprietor's claim to a regularly collected appropriate salary as a general and administrative expense of the proprietorship's contract. Further, the Cost Principles applicable to P's contract provided that subject to certain restrictions salary amounts may be reimbursed to sole proprietors.

■ In determining whether plaintiff's constructive compensation claim is allowable, and the Board erred in denying the claim, it is the parties' contract rather than any commonsense principles of proprietorships which governs. Under the parties' contract defendant agreed to reimburse plaintiff for its direct contract performance costs determined in accordance with the contract's Cost Provisions. Defendant agreed to reimburse plaintiff for the indirect contract performance costs on a percentage basis of its direct costs. The parties' contract sets forth defendant's reimbursement obligation of plaintiff's indirect contract costs as follows:

*II—Indirect U.S. Dollar Costs*

(a) Except as otherwise provided in Article III(a), indirect costs (overhead) allocable to the contract, shall be reimbursed periodically in amounts equal to the provisional percentages as set forth in Article III(a) of direct U.S. dollar authorized base salaries (excluding overseas salary differentials) paid by Contractor to the categories of employees specified in Article III(a) of the contract. Any provisional rate set forth in Article III(a) of the contract is based upon an analysis and evaluation by A.I.D. of relevant data relating to Contractor's overhead costs and is subject to revision anually as of the close of the Contractor's fiscal year to an actual rate on the basis of such annual or other audits as A.I.D. (or other appropriate U.S. Government agency) may make. Promptly following establishment of any actual overhead rate by any such audit, an appropriate adjustment will be made in the billings for the period covered by the audit subject to the application of the appropriate maximum rate set forth in Article III(a) of the contract. Any rate so established by audit or the appropriate maximum rate whichever is lower shall be used as a provisional rate for the ensuing fiscal year. Payments for subsequent fiscal years shall be computed and adjusted in the same manner.

(b) Allowable overhead items will normally include those indirect expenses of the Contractor's home office which are properly allocable to the contract by methods in accord with those generally accepted accounting principles which are applicable under the circumstances. The objective sought in such allocations is to distribute fairly and equitably to the contract, on the basis of the benefit received or in proportion to the cause of the incurrence of the expense, a reasonable share of the cost of each allowable item of indirect expense. Direct costs which are not allowable as such shall not be allowable as indirect costs.

(c) Examples of items which are allowable may include reasonable salaries paid

to partners, principals, officers and other direct employees; social security taxes, workmen's compensation insurance, payments under established pension, retirement, group health, accident and life insurance and incentive payment plans, and vacation, holiday and severance pay, sick leave and military leave pay all to the extent that such items are not included in the direct costs authorized by the contract; also legal and accounting expense, new business activities, clerical and stenographic work, general accounting, personnel, office and drafting room supplies, depreciation of buildings, office and drafting room furniture and equipment and/or amortization of leasehold improvements, local telephone service, rent of office space and equipment, utilities, nonallocable time of engineers, draftsmen and other technical employees.

Under the above Cost Provision of the parties' contract defendant obligated itself to reimburse plaintiff for only those items of indirect contract expenses as to which plaintiff incurred a cost and paid or incurred an obligation to pay. As plaintiff incurred no cost for the Gillers' administrative services and made no payment or incurred an obligation to pay the Gillers for their administrative services, the constructive cost of these services are not reimbursable under the indirect cost provisions of the parties' contract and the Board committed no error in denying the claim " * * * as nonreimbursable under any theory or computation of the contract costs". 73–1 BCA ¶ 10,016 p. 47,009.

■ It should be noted that even if plaintiff were entitled to a claim for its proprietor's administration of the contract such a claim would have to be measured by the value of Mr. Giller's services alone as the record does not reflect that Mrs. Giller stood in a proprietor, partner, management or ownership position to plaintiff.

■ Plaintiff points to both the Federal Procurement Regulations[2] and the Armed Services Procurement Regulations as entitling plaintiff to compensation for the Gillers' administrative services. Specifically plaintiff relies on Federal Procurement Regulation § 1–15.205–6(a)(3)[3] which provides:

Compensation in lieu of salary for services rendered by partners and sole proprietors will be allowed to the extent that it is reasonable and does not constitute a distribution of profits.

As the above regulation provides that compensation in lieu of salary "will be allowed" to sole proprietors, plaintiff contends that the Board erred in denying its constructive compensation claim. While the above cited regulation allows compensation in lieu of salary as alternative remuneration to sole proprietors for their efforts, it is the contract itself rather than the regulation which must govern whether such compensation is collectable from defendant.

Plaintiff has framed its claim as one for recovery of indirect overhead expenses on account of the Gillers' rendering of administrative services during the four-year life of the parties' contract. The contract provided that plaintiff's indirect contract expenses would be reimbursed in accordance with the Cost Provision set forth above. That Cost Provision governing defendant's reimbursement obligation of plaintiff's indirect costs, as previously discussed, makes no provision for reimbursement of indirect costs which are not either actually expensed or paid. As plaintiff during the life of the contract neither expensed nor paid the Gillers for their administrative services such constructive costs are not reimbursable as indirect contract costs. While the cited Federal Procurement Regulation permits defendant to allow sole proprietors compensation in lieu of salary, it is the contract which must provide for that allowance.

---

2. Subpart 1–15.2 of the Federal Procurement Regulations was specifically incorporated into the parties' contract with the exception that in the event of conflict between the regulations and the contract's Cost Provisions, the latter would govern.

3. 41 C.F.R. § 1–15.205–6(a)(3) (as of Jan. 1, 1963).

The regulation standing alone does not provide an entitlement to indirect cost reimbursement in the absence of a contract clause obligating defendant to reimburse plaintiff for such costs. Thus the Board's conclusion that " * * * nothing in [the Federal Procurement Regulations], or about the policy thereunder, suggests the reimbursement of an unrealized expense or charge." 73–1 BCA ¶ 10,016 p. 47,014, is both accurate and legally correct.

 Lastly, plaintiff urges that analogous tax decisions, considerations other than whether plaintiff paid or incurred an obligation to pay the Gillers for their administrative services and defendant's failure to conduct annual audits as provided in the contract, justify plaintiff's recovery of constructive compensation for the Gillers' administrative services. Consideration of this collage of justifications provides no valid basis for overriding the terms of the parties' contract or overruling the Board's decision denying plaintiff's claim. While plaintiff maintains that defendant's failure to conduct an annual audit of plaintiff's contract performance as provided in the contract, prevented it from realizing that the Gillers were not being compensated for their administrative services it fails to validly explain how such an audit of plaintiff's contract performance cost records would have alerted either party to the cost of the Gillers' services of which there was no record.

Further weakening plaintiff's argument over the recovery of its constructive compensation claim is the fact that defendant did conduct one audit of plaintiff's contract performance at the end of its first year of contract performance. Following that audit the parties held several conferences to resolve differences over the audit. At no time during these discussions did compensation for the Gillers' administrative services surface as a disputed issue. As the issue of compensation for the Gillers did not surface in defendant's audit of plaintiff's contract performance or the extensive discussions following that audit, there is little basis for speculating, as plaintiff does, that it would have surfaced in subsequent audits.

A thorough review of the record with attention to the facts that plaintiff's constructive compensation claim arose only after the termination of the contract, and then only after a full private audit of plaintiff's accounting methods, lends credence to defendant's view that the Gillers, as proprietors of plaintiff, considered themselves satisfactorily compensated for their administrative duties from the tutset of their multi-year contract by the contract's fixed-fee, and that the instant claim amounts to a contrived attempt to recover from defendant an imaginary cost. Plaintiff's arguments have failed to convincingly demonstrate error in the Board's decision denying plaintiff's constructive compensation claim, or that plaintiff has in fact a legitimate unsatisfied claim against defendant.

Accordingly, defendant's cross-motion for summary judgment is granted. Plaintiff's summary judgment motion is denied, and its petition dismissed.