Paul E. McCOLLUM, Sr., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 346–82C.

United States Claims Court.

Oct. 4, 1984.

Paul L. Waldron, Washington, D.C., for plaintiff. Daniel J. Donohue, F. Gregory McKenna and Hudson, Creyke, Koehler & Tacke, Washington, D.C., of counsel.

Michael A. Gordon, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

MAYER, Judge.

Plaintiff Paul E. McCollum, Sr., seeks review under the Wunderlich Act, 41 U.S.C. §§ 321–322 (1976), of a decision of the Armed Services Board of Contract Appeals (Board), ASBCA No. 23269, 81–2 BCA ¶ 15,311. The case is before the court on cross-motions for summary judgment. The stated facts are findings of the Board or otherwise properly derived from the administrative record. *See Ordnance Research, Inc. v. United States*, 609 F.2d 462, 465, 221 Ct.Cl. 641 (1975).

### Background

The facts are fully presented in two Board decisions. *Paul E. McCollum, Sr.*, ASBCA No. 23269, 81–2 BCA ¶ 15,311; *Paul E. McCollum, Sr.*, ASBCA No. 20120, 77–1 BCA ¶ 12,271. Those essential to this decision are set out here.

Under a small business set aside, plaintiff was awarded a Department of Health and Human Services contract on October 23, 1974, for the construction of water distribution systems on two Indian reservations near San Diego, California. The contract was terminated for default on February 12, 1975. Plaintiff timely appealed the default termination on February 18, 1975. On November 29, 1976, the Board determined that the default termination was improper and converted it to one for the convenience of the government.

The Board directed the parties to negotiate a termination for convenience settlement. Plaintiff submitted his first settlement proposal on March 2, 1977, and on June 14, 1977, he increased it. Defendant

did not respond, and plaintiff filed an appeal (quantum appeal) with the Board on September 13, 1978, some 15 months after he had presented his amended settlement claim. Finally, on October 6, 1978, defendant responded with a counter offer, to which plaintiff replied by increasing his settlement proposal. The parties were unable to reach agreement and the Board intervened. On August 12, 1981, the Board ordered an award to plaintiff with interest to be computed at a fixed rate, the rate in effect at the time plaintiff filed his quantum appeal on September 13, 1978. Interest also began to accrue on this date.

In calculating the award, the Board determined that plaintiff was performing at a 20.7% loss and was therefore entitled to only 79.3% of his incurred costs. It refused to increase equipment costs reimbursement and denied any recovery for interest on investment. The Board further determined plaintiff was entitled to no additional compensation for his personal services. And because it could not tell which attorneys and accountants fees were incurred solely in preparation of his settlement claim, it allowed no recovery for any of them.

Plaintiff challenges the Board's decision with these arguments:

1. The Board improperly calculated the settlement award by using a fixed instead of a variable interest rate.

2. Interest on the settlement award should have accrued from the appeal of his default termination, not from the appeal of the termination for convenience settlement.

3. The Board wrongly determined that plaintiff was in a loss position.

4. Equipment costs reimbursement should have been calculated at a higher rate.

5. Plaintiff should have been allowed interest on his investment.

6. Plaintiff was not fully compensated for his personal work.

7. Compensation for attorneys and accountants fees should have been allowed.

Defendant urges affirmance of the decision in its entirety.

## Discussion

"Under the Wunderlich Act, a board's determinations on questions of law are not binding on the court, but will be credited if reasonable and based on a board's expertise. *See, Flexible Metal Hose Manufacturing Co. v. United States*, 4 Cl.Ct. 522, 527 (1984) [*appeal docketed*, No. 84–1108 (Fed.Cir. April 13, 1984)]; *Dale Ingram, Inc. v. United States*, 475 F.2d 1177, 1185, 201 Ct.Cl. 56 (1973). A board's findings of fact, however, are binding on the court unless shown to be arbitrary, capricious or not supported by substantial evidence. See *Flexible Metal Hose Co. v. United States*, 4 Cl.Ct. at 527; *Koppers Co. v. United States*, 405 F.2d 554, 557, 186 Ct.Cl. 142 (1968)." *Peterson-Sharpe Engineering Corp. v. United States*, 6 Cl.Ct. 288, at 293 (1984).

### Fixed Rate of Interest

■ "An allowance of interest on a claim against the United States, absent constitutional requirements, requires an explicit waiver of sovereign immunity by Congress. Such express consent to the payment of interest must be found in either a specific statutory or an express contractual provision." *Fidelity Construction Co. v. United States*, 700 F.2d 1379, 1383 (Fed.Cir. 1983). *See also Brookfield Construction Co. v. United States*, 661 F.2d 159, 165, 228 Ct.Cl. 551 (1981). The contract here expressly permits the recovery of interest on a claim, but the parties disagree about whether it accrues at variable rates.

General Provision 25 (GP 25) of the contract says, "Such interest shall be at the rate determined by the Secretary of the Treasury pursuant to Public Law 92–41, 85 Stat. 97 ...." Under Public Law 92–41, the Renegotiation Act, the interest rate paid by the government is adjusted by the Secretary of the Treasury every six months so that the rates parallel private commercial rates. Because this statute was referred to in the contract, plaintiff believes

the interest on his award should vary in accordance with the periodic Treasury adjustments.

In support of this proposition, plaintiff cites *Brookfield Construction Co. v. United States*, 661 F.2d 159, in which the court interpreted section 12 of the Contracts Disputes Act of 1978, 41 U.S.C. § 611, a statutory payment of interest provision similar in language to GP 25. The court there held that interest on payments under government contracts should be paid at a variable rate, *id.* 661 F.2d at 170, and plaintiff argues that *Brookfield's* construction should apply as well to his contract.

He also urges the court to follow the General Services Board of Contract Appeals decision in *Joseph Penner*, GSBCA No. 6820, 83–1 BCA ¶ 16,282, where the Board applied *Brookfield* to a contract clause identical to GP 25. It reasoned that because section 12 and the contract clause have essentially the same language, *Brookfield* requires that they both be interpreted the same. "The Act and the clause are *in pari materia:* they use the same language, serve substantially the same purpose, and ought to be similarly interpreted." 83–1 BCA ¶ 16,282 at 80,894. This interpretation of *Brookfield* led the Board to overrule its earlier decision in *Schindler Haughton Elevator Corp.*, No. 5390, 80–2 BCA ¶ 14,671, in which it said the language of GP 25 permitted a contractor to recover only a fixed rate of interest on its settlement.

*Penner* notwithstanding, however, the court is of the view that *Brookfield* does not extend so far. By its express language, it applies only to interest accruing under section 12 of the Contract Disputes Act. The Court of Claims cautioned against broad interpretations. "[W]e should not expand the boundaries of section 12 to cover territory not necessarily or clearly included within its terms and perimeters." 661 F.2d at 165.

Although the language of section 12 is similar to that of GP 25, it does not follow that they must be construed the same. The Court of Claims based its *Brookfield*

decision in large measure on the legislative intent behind section 12. *Id.* at 170. Section 12 has an independent legislative history on which the Court of Claims relied while GP 25 refers solely to the Renegotiation Act, the legislative history of which clearly envisions a fixed rate of interest. Concededly, adverting to legislative history can be perilous, but this statement at least is clear and admits of only one meaning.

> The rate of interest, determined in the manner provided above, for any particular 6-month period is to apply to all determinations of excessive profits, and to all overcollections of excessive profits, on which interest begins to run in the period in question. *The interest rate once determined in this manner with respect to any specific excessive profits determination is to continue unchanged thereafter with respect to those excessive profits.*

S.Rep. No. 92–245, 92d Cong., 1st Sess. 6, *reprinted in* 1971 U.S.Code Cong. & Ad. News 1130, 1135 (Emphasis added).

Furthermore, until *Penner*, as the General Services Board itself acknowledged, it was the consistent and traditional practice to apply a fixed rate of interest under this type of contractual provision.

> We recognize also that to apply a fluctuating rate differs from the way interest was computed under the "Payment of Interest on Contractors' Claims" clause, which also provides for payment of interest "at the rate established by the Secretary of the Treasury [for the Renegotiation Board]." In *Schindler Haughton Elevator Corp.*, GSBCA No. 5390, 80–2 BCA ¶ 14,671, we applied a non-fluctuating rate under that clause consistent with what was the standard practice of Government agencies and with decisions of other boards of contract appeals interpreting that Government-prepared clause.

*Honeywell, Inc.*, GSBCA No. 5458, 81–2 BCA ¶ 15,383 at 76,215.

*Brookfield* is no reason to depart from the government's established method of paying interest under contractual provi-

sions like GP 25. In light of the consistent practice of paying at a fixed rate, the parties are deemed to have anticipated this result when they made the contract. The interest clause should not now be interpreted contrary to their intentions and expectations when agreement was reached. *See Max Drill, Inc. v. United States*, 427 F.2d 1233, 1240 (Ct.Cl.1970). To interpret this provision as calling for a variable rate of interest would not only be inconsistent with their intentions, it would provide a windfall to the plaintiff wholly unanticipated at the time of the contract. The Board correctly determined that plaintiff is entitled to recover only a fixed rate of interest on its settlement award.

### Date of Interest Accrual

■ The Board allowed interest from September 13, 1978, the date on which plaintiff filed the quantum appeal after defendant's delay in responding to his proposed settlement. GP 25 not only governs the rate of interest, it also says that interest will accrue "from the date the Contractor furnishes to the Contracting Officer his written appeal under the Disputes clause of this contract...." The argument here centers on the words "written appeal." In the course of this dispute, plaintiff has filed two written appeals: the appeal from the default termination on February 18, 1975, and the quantum appal on September 13, 1978. He contends that the "written appeal" triggering the accrual of interest is the earlier default appeal. Defendant, on the other hand, argues that the Board correctly determined that interest is to run only from the date of the quantum appeal. This is because until then there is no dollar amount on which interest may be applied.

Defendant urges the court to follow *Seven Science Industries*, ASBCA No. 23,337, 80–2 BCA ¶ 14,518, which held that interest after a termination for default has been converted to a termination for convenience runs only from the filing of an appeal disputing the amount of an award. The Armed Services Board reasoned that "there was no amount due at the time the

earlier appeal was filed, since no amount could be due until appellant presented its termination for convenience settlement proposal." *Id.* at 71,558. Defendant also believes that this is the better point of interest accrual because otherwise plaintiff's delay in submitting his settlement claim will be rewarded. Plaintiff relies on *Essex Electro Engineers v. United States*, 702 F.2d 998 (Fed.Cir.1983), to support his claim to interest from the date he filed his appeal of the default termination.

*Essex* indicated that interest under a contract clause identical to GP 25 begins to accrue at the time a default termination is appealed. The court said, "The interest clause of Essex's contract provided that interest would accrue 'from the date the Contractor furnishes to the Contracting Officer his written appeal under the Disputes clause.' This would have been March 14, 1979." 702 F.2d at 1003 n. 9. March 14, 1979, was the date the contractor appealed its default termination to the board, *id.* at 999; it did not file a quantum schedule until almost a year later.

Of course, interpretation of the contract clause was not essential to the outcome of any of the issues decided in *Essex*, and is clearly dictum. But the date of the default termination cited was not inadvertently chosen. The dissent disagreed, and concluded that the contract required interest to accrue from the date on which a quantum schedule was submitted, February 22, 1980. 702 F.2d at 1005. While perhaps not controlling, this dialogue shows the court considered the appropriate date of interest accrual and this court should not lightly disregard its conclusion.

The date chosen reaches a fair and practical result. The government will suffer no undue hardship by incurring liability for interest from the appeal of the default termination. After all, the effect of the conversion of that termination is to give plaintiff what he should have had in the first instance, a convenience termination. Yet it is not unexpected that he had not marshalled his quantum facts at that time, since he could not know in advance if he

would ever need them. On the other hand, plaintiff will not be rewarded with interest if there was undue delay in pursuing his remedies. GP 25 expressly provides that accrual of interest may be suspended for any period where it is determined the contractor has unduly delayed in presenting his claim "before a board of contract appeals or a court of competent jurisdiction." Therefore, if it is later determined that plaintiff unduly delayed pursuit of his remedies, interest will not be awarded for those periods. Otherwise he is entitled to interest from the date he appealed the default termination, February 18, 1975.

### Determination of Loss Position

■ In its calculation of plaintiff's award, the Board found he was in a loss position of 20.7%. This percentage was based on a finding of what plaintiff would have had to spend to complete the contract correctly. This sum was the actual cost of reprocurement paid by the government. Plaintiff contends that this figure is inaccurate and does not fairly represent what his actual cost of completion would have been. As an incumbent contractor already working at the construction site, he argues that his cost of completion would have been much less, and would have left him in a profit position of 18%.

Plaintiff cites *J.D. Hedin Construction Co., Inc. v. United States*, 456 F.2d 1315, 197 Ct.Cl. 782 (1972), for the proposition that the government's reprocurement cost is not to be used as the measure of the incumbent contractor's cost of completion. He reads that case too broadly. It did not say that reprocurement costs should never be used as a measure of completion cost, only that there the cost of completion was not a "fair measure of what plaintiff's [costs] would have been...." *Id.* 456 F.2d at 1325.

Before the Board, defendant offered abundant evidence that the reprocurement cost was a fair measure of plaintiff's cost of completion. The government went to great lengths to mitigate damages and reprocure at the lowest possible cost. The

Board's decision lists the cost control efforts:

Certain costs were not charged to the Government's cost of completion. All wages above those paid by appellant for similar work were absorbed by the Government as was the overhead. Laborers were paid only for actual time worked. Equipment was rented only for actual time worked and included the wages of the operator. Certain material, such as decomposed granite to line and trench excavations, was contributed by the Indian Bands for whom the water system was being installed. No charge was made for engineering supervision provided by Government employees. Profit was excluded except where certain work was performed by other contractors.

81–2 BCA ¶ 15,311 at 75,820 (transcript citations omitted). This shows that defendant met its burden of proving the accuracy and reasonableness of its cost of completion to the Board. The Board's findings reflect the substantial evidence defendant presented in support of the cost of completion figure adopted. Moreover, the Board also found that plaintiff "did not present sufficient proof to determine if its estimate of the cost to complete was either reasonable or accurate." 81–2 BCA ¶ 15,311 at 75,280. He made only bald assertions that he was not in a loss position and did nothing to refute defendant's evidence.

Accordingly, the Board's finding that the reprocurement cost is a reasonable and accurate measure of the cost of completion is supported by substantial evidence and will not be disturbed. *See Flexible Metal Hose*, 4 Cl.Ct. 522, 527 (1984), *appeal docketed*, No. 84–1108 (Fed.Cir. April 13, 1984); *H & H Manufacturing Co., Inc. v. United States*, 168 Ct.Cl. 873, 885 (1964). The government's reprocurement costs are a fair measure of what plaintiff's cost of completing this contract would have been, and the Board properly determined that he was in a loss position.

### Equipment Rates

Plaintiff also says the Board erred by using the rate schedule of the Associated General Contractors of America (AGC) when calculating his reimbursement for equipment costs. He claims the Board used the AGC schedule under the mistaken impression that DAR § 15–402.1(c) required its use. The Federal Procurement Regulations govern this contract, and unlike the Defense Acquisition Regulations they do not mandate the use of the AGC schedule.

It is true that the Defense regulations do not govern this Department of Health and Human Services contract, but the Board did not apply DAR § 15.402.1(c) under the mistaken belief that its use was mandated. It merely used it as a guideline because the Federal Procurement Regulations do not contain an equivalent provision. 81–2 BCA ¶ 15,311 at 75,822. In fact, in similar situations where the contractor is the owner of equipment, the AGC schedule has often been used to determine the appropriate rate of reimbursement. *See Degenaars Co. v. United States,* 2 Cl.Ct. 482, 492 (1983), *aff'd mem.,* 732 F.2d 167 (Fed.Cir. 1984); *Cornell Wrecking Co. v. United States,* 184 Ct.Cl. 289, 291 (1968). There was no error in calculating plaintiff's reimbursement of equipment costs according to the AGC schedule.

### Interest on Investment

Plaintiff contends he is entitled to interest on investment despite his failure to present any evidence of the amount he claims. He believes the Board should have awarded him an approximation of his cost in the nature of a jury verdict.

This argument fails for two reasons. The jury verdict method has been used when an exact measure of damages is not possible, but it must be a fair and reasonable approximation of the damages incurred. *Salem Engineering & Construction Corp. v. United States,* 2 Cl.Ct. 803, 808 (1983); *S.W. Electronics and Manufacturing Corp. v. United States,* 655 F.2d 1078, 1089 (Ct.Cl.1981). A jury verdict must be based on some evidence; it would not support an award which has no foundation in the record. 655 F.2d at 1088.

The recovery of interest on investment is also properly denied because plaintiff's contract did not require it in the event of a termination for convenience. An allowance of interest on a claim against the United States requires an explicit waiver of sovereign immunity, and can be paid only if required by a specific statutory or an express contractual provision. *United States v. N.Y. Rayon Co.,* 329 U.S. 654, 659, 67 S.Ct. 601, 603, 91 L.Ed. 577 (1947); *L'Enfant Plaza Properties, Inc. v. United States,* 3 Cl.Ct. 582, 592 (1983), *aff'd mem.,* No. 84–665 (Fed.Cir. August 10, 1984); *Bromley Contracting Co. v. United States,* 596 F.2d 448, 450, 219 Ct.Cl. 517 (1979). Plaintiff has benefit of neither of these and may not recover interest on his investment.

### Compensation for Personal Work

Plaintiff was compensated for 288 hours of work he personally performed. For the 144 hours of work done prior to the termination, he was paid at $9.17 per hour. For the remaining 144 hours of work performed after the termination, he received $11.88 per hour. Plaintiff contends his hourly rate is at least $25.00 and the Board should have based the award on this rate.

The Board concluded that because plaintiff, as owner, normally took the company profits as compensation and did not receive a salary, he was not entitled to any compensation for his time. 81–2 BCA ¶ 15,311 at 75,822, *citing Norman M. Giller & Associates v. United States,* 535 F.2d 37, 210 Ct.Cl. 80 (1976). However, it did not disturb the hourly compensation awarded because it was not contested by defendant, apparently in accordance with FPR § 1–15.-403–7(c) which permits compensation for certain inspection activities performed by a proprietor. However, the regulation also says the "compensation should not exceed the actual salary rate of the individual concerned." *Id.*

At the Board hearing, plaintiff's accountant testified that plaintiff's actual hourly rate was $25.00. However, on cross-examination he admitted that for the previous two years plaintiff had earned in terms of profit an average of $4 per hour. In light of this evidence, the Board's award is generous. It is not precisely clear what plaintiff's actual rate of compensation should be, but he was awarded a higher rate than he had earned in the period preceding this contract. Defendant has not challenged the Board's award, so it will not now be reduced. But there is no reason to increase it.

### Litigation Fees

Plaintiff's final settlement proposal included accountants and attorneys fees incurred during the default litigation, the convenience settlement negotiations, the convenience quantum litigation, and tangentially related litigation. Generally, litigation expenses are not recoverable against the United States except where expressly allowed by contract or statute. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975); *L'Enfant Plaza Properties, Inc. v. United States*, 3 Cl.Ct. at 594. The termination clause of this contract permitted recovery of certain fees, but only those accounting, legal, and clerical costs reasonably necessary for the preparation and presentation of a settlement claim to the contracting officer. *See* FPR § 1–15.205–42(f).

The Board found, however, that plaintiff's claim for accountants and attorneys fees included more than those permitted. It concluded he attempted to recover both allowable and unallowable costs.

No statements, billings or receipts for payment for either legal or accounting services and other settlement related costs were introduced into evidence. The burden of proof is on appellant to prove its costs. Unsupported allegations in the claim are not proof. Appellant has also failed to produce sufficient evidence for the Board to determine which costs are allowable and which costs are unallowable with respect to its settlement expenses. When allowable and unallowable claims costs are comingled and there is not sufficient proof to segregate the allowable from the unallowable, the entire claim must be rejected.

81–2 BCA ¶ 15,311 at 75,824.

Plaintiff had the opportunity to present evidence of the accountants and attorneys fees specifically incurred in preparation and presentation of his termination for convenience settlement claim to the Board. If he had taken advantage of that opportunity, he could have recovered them. His attempt at a second chance here comes too late. The other accountants and attorneys fees claimed, of course, are not allowable because they were incurred in litigation against the United States and no authority is available to award them.

### Conclusion

Accordingly, the motions for summary judgment are granted in part and denied in part. The case is remanded to the Armed Services Board of Contract Appeals for further proceedings not inconsistent with this opinion.

It is so **ORDERED.**