**ARKANSAS BEST FREIGHT SYSTEM, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 621–89C.

United States Claims Court.

July 20, 1990.

William E. Kenworthy, Washington, D.C., for plaintiff.

Steven A. Hemmat, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, and Stephen J. McHale, Washington, D.C., for defendant; Leonard M. Shinn, General Services Admin., of counsel.

OPINION

BRUGGINK, Judge.

The issue raised in this action is whether defendant is liable for payment of interest pursuant to the Prompt Payment Act, 31 U.S.C. §§ 3901–07 (1988) ("Act"). Jurisdiction has been invoked under the Contract Disputes Act, 41 U.S.C. §§ 601–13 (1988) ("CDA"). The parties have filed cross-motions for summary judgment. There are no material issues of fact in dispute and the motions are ready for adjudication. Oral argument is deemed unnecessary.

BACKGROUND

Arkansas Best Freight System, Inc. ("ABF") operates a trucking line. It contracted with the Government to provide carrier services, and there has been an ongoing commercial relationship between the parties.[1] With respect to at least 75 shipments transported by ABF for the Government prior to May 1987, ABF invoiced the Government at its standard tariff rate. GSA performed an audit of those invoices, apparently after they had been paid, and based on that audit, concluded that the Government was entitled to a special discounted rate for direct haul service. GSA later collected the difference as overcharges from monies otherwise due ABF.

ABF sought review before the Comptroller General of the Government's decision to apply the discounted rate to itself. The only question presented by the parties for resolution was the applicability *vel non* of

---

1. The record does not reflect which agency or agencies requested the carrier services which are the subject of the freight charges.

the discounted rate. On May 11, 1987, the Comptroller General issued a decision favorable to plaintiff. The GSA was instructed to "issue settlement of this and similar claims consistent with this decision." 66 Comp.Gen. 442 (1987).

At a meeting held on June 3, 1987, the parties agreed upon a method for ABF to submit claims to recover amounts deducted or withheld contrary to the Comptroller General decision. It was determined that plaintiff would submit new vouchers to GSA (Forms SF–1113) adverting to the decision. ABF submitted those vouchers, and each was paid in full. Payments were not made within the time limits established under the Act, however. Plaintiff thereafter submitted a claim to the Administrator of GSA for penalty interest under the Act in the amount of $817.98. It is plaintiff's position that interest began accruing as of the date the new vouchers were submitted to the Administrator. That claim was denied on the grounds that the Act does not call for interest for delayed payment if the underlying request for payment is disputed. For the following reasons, the court concludes that interest is mandated by the Act under these circumstances.

## DISCUSSION

The Prompt Payment Act directs the Government to pay proper invoices on time, or to pay interest when payments are made late. 31 U.S.C. § 3902–03. Office of Management and Budget Circular A–125 (originally issued on August 19, 1982, and reissued in substantially the same form on June 9, 1987) provides direction as to implementation of the Act. The Circular sets out the formula for calculation of due dates for payment. There is no question that the payments at issue here were untimely and that, barring the defense raised by the Government, would accrue penalty interest.

Part 8 of Circular 125 directs the automatic payment of an interest penalty if there is a contract or purchase order with the business, if goods have been accepted with no disagreement, if there has been a proper invoice submitted, and if payment is made more than 15 days after the due date.

The Government does not contend that plaintiff's interest claim is defective in any of these regards. Rather it points to the following paragraph of Part 8:

> c. Interest penalties are not required when payment is delayed because of a disagreement between a Federal agency and a business concern over the amount of the payment or other issues concerning compliance with the terms of a contract.... Claims concerning disputes, and any interest that may be payable with respect to the period while the dispute is being settled, will be resolved in accordance with the [CDA].

This language comports with 31 U.S.C. § 3907(c): "this chapter does not require an interest penalty on a payment that is not made because of a dispute between the head of an agency and a business concern over the amount of payment or compliance with the contract."

Part 9 of Circular 125 deals with calculation of interest. It provides that interest is assessed beginning with the payment due date. It also provides that interest under the Act ceases to run after the filing of a claim for interest penalties under the CDA.

The defendant also relies on 41 C.F.R. § 101–41.604–2(b) (1988), which gives GSA guidance on payment of transportation claims. That section provides, in part:

> (b) Agencies shall not pay the following types of transportation claims:
>
> ....
>
> (3) Any claim that is doubtful. A claim is doubtful when in the exercise of fair judgment of the person responsible for deciding appropriate administrative action or the person who, in accordance with applicable statutes, will be held accountable if the claim were paid and then found to be incorrect, illegal, or improper, is unable to decide with reasonable certainty that the claim is valid and correct. The accuracy of rates, fares, routes, and related technical data shall not be a factor in determining the correctness of the claim.

. . . .

(5) Claims described in paragraph (b) of this section are subject to GSA prepayment audit. Any claims so submitted to GSA will be considered 'disputed claims' under Section 4(b) of the Prompt Payment Act.

(6) Interest penalties under the Prompt Payment Act are not required when payment is delayed because of a disagreement between a Federal agency and a carrier or a forwarder over the amount of the payment or other issues.

The statutory and administrative provisions thus use three phrases to refer to a claim (in this context) on which penalty interest need not run—a claim which is in "dispute,"[2] is "doubtful," or as to which there is a "disagreement." The term "doubtful," in turn, has specific regard to an inability to decide with reasonable certainty whether a billing is "incorrect, illegal, or improper." *See* Circular 125 Part 8(b)(3).

Defendant argues that the resubmitted vouchers were subject to dispute. It contends that the Comptroller General's decision "did not determine the validity of each of the disputed vouchers which represent ABF's claims, nor did it award a conclusive

amount of money to ABF." Brief of May 17, 1990 at 6. It attempts to explain the importance of this observation: "After the Comptroller General issued his opinion in B–221705, each voucher claimed by ABF had to be examined in order to determine whether it came within the bounds of the General Accounting Office ... decision." *Id.* It was also necessary to "review the decision and audit each of ABF's bills to determine whether the claim had a correct basis and whether any setoff deductions were required." *Id.* at 6–7.

The court has carefully considered the defendant's submissions and the affidavit of James F. Fitzgerald.[3] It is not unfair to the defendant to state that despite the large number of questions which it suggests have to be asked in reauditing after a Comptroller General decision, defendant has not pointed to a single matter as to which the new vouchers were disputed. The vouchers were paid in full. There is nothing in the record to suggest that the reviewers had any specific reason to believe that the claims were doubtful. What is it that made these claims doubtful? What reason did GSA have to think that the amounts were incorrect? That the claims were illegal? "Doubt" or "disagree-

---

2. The legislative history confirms the drafters intention to link the concept of "dispute" under the Prompt Payment Act to the CDA:

> Provisions of this Act providing for the payment of interest penalties on overdue bills are not applicable when there is a dispute between a Federal agency and a business concern over the terms and/or manner of compliance with a contract. The Committee intends that any questions concerning the amount of an invoice or the performance of a contract be raised in good faith, in order to establish a bona fide dispute between the agency and the business concern involved. The resolution of such disputes shall be governed by the provisions of the Contract Disputes Act, which Act shall also control the rate and conditions under which interest penalties will accrue in such instances.

H.R.Rep. No. 461, 97th Cong., 2d Sess. 15, *reprinted in* 1982 U.S.Code Cong. & Ad.News 111, 125. The term "dispute" is indirectly brought into the CDA through 28 U.S.C. § 1491(a)(2) (1988), which gives this court jurisdiction over "any claim by or against, or dispute with, a contractor" arising out of the CDA. This court

has emphasized that a claim does not exist unless there is a dispute. *Overall Roofing and Constr. Inc. v. United States,* 20 Cl.Ct. 181, 183 (1990); *Esprit Corp. v. United States,* 6 Cl.Ct. 546, 548 (1984), *aff'd without op.,* 776 F.2d 1062 (Fed.Cir.1985). Although the context of those decisions was completely different than the present inquiry, they highlight the obvious— there cannot be a dispute unless the parties are in disagreement over something. As the Court of Claims opined in *Keystone Coat & Apron Mfg. Co. v. United States,* 150 Ct.Cl. 277, 281 (1960), "We have always thought it takes two to make a dispute."

For this reason, defendant's effort to counter plaintiff's alternative request for interest under the CDA from the date the second set of vouchers was submitted is particularly ironic. Defendant recites that "there existed no bona fide dispute when the invoices were submitted." Brief of July 16, 1990 at 7. If indeed there was no dispute, it is difficult to understand the basis for defendant's refusal to pay interest.

3. Director of the Accounts and Collections Division, Office of Transportation Audits, Federal Supply Service, GSA.

ment" or "dispute" plainly must mean something more than the mere fact that the claims were submitted and had to be reviewed.

Reviewing a resubmission to determine *whether* there is a basis for rejection or offset is not the same thing as a doubt, or a dispute, or a disagreement. Presumably any entity in government responsible for reviewing billings has to enquire whether a claim is correct, legal and proper. If the mere fact of making that determination constitutes a dispute, however, there would never be a penalty interest payment and that part of the Act would be a nullity.

It is apparent from the record that there has only been one issue in dispute between the parties with respect to the underlying transportation charges. That is, was the Government entitled to the discounted direct service rates? The suggestion that a dispute remained because the Comptroller General did not determine the validity or amount of the shipping charges is completely without merit. The Comptroller General eliminated the only source of disagreement between the parties. Although the claims had to be reviewed to determine whether they were correct, legal, and proper, and to determine their amount as well as potential offsets, the General Accounting Office was in that same circumstance before it erroneously challenged the billings. If the penalty provisions mean anything, they must mean that there has to be a present basis for delaying payment which is related to an objectively discernible dispute.

As the drafters explained concerning the penalty interest provision, "The Committee intends that any questions concerning the amount of an invoice or the performance of a contract be raised in good faith, in order to establish a bona fide dispute between the agency and the business concern involved." H.R.Rep. No. 461, 97th Cong., 2d Sess. 15, *reprinted in* 1982 U.S.Code Cong. & Ad.News 111, 125. The defendant's effort to create a dispute out of generic review responsibilities and complexities inherent in an audit is inconsistent with this language.[4] There was no question raised concerning amount or contract performance. There was certainly no dispute "between the agency" and ABF. Defendant would be correct if the Act or its regulatory offspring contained an exception for unusually time consuming reviews, or reaudits, but it does not and the court will not add one.

The legislative history created along with the 1988 amendments to the Act speaks even more directly to the present circumstances:

> The Act's protections apply only when there is no dispute relating to a contractor's performance in accordance with the terms and conditions of the contract. If a dispute exists, a contractor is not entitled to payment or late payment interest penalties until the dispute is resolved.

H.R.Rep. No. 784, 100th Cong., 2d Sess. 11, *reprinted in* 1988 U.S.Code Cong. & Ad. News 3036, 3039. The only dispute between the parties was resolved by the Comptroller General's decision. At the time the second set of vouchers was submitted, therefore, the dispute was resolved.

## CONCLUSION

Plaintiff's motion for summary judgment is granted. Defendant's motion is denied. The Clerk is directed to enter judgment for plaintiff for $817.98,[5] along with interest

---

**4.** The letter of April 13, 1989, from the General Accounting Office to counsel for ABF affords no support for defendant's contention that a dispute existed. This letter is a response to a request for interest, not for payment on the resubmitted vouchers, which had long since been paid. Any dispute it raises concerns interest, not the freight charges. The fact that the Comptroller General did not specify the amount of the payment which GSA had to make is irrelevant.

**5.** Defendant has not challenged ABF's calculation of interest. Because this action is apparently a test case in some respects, however, the court makes the following observations. In its claim to the Administrator of GSA, ABF's counsel indicates that it is plaintiff's position that interest under the Act runs from the date of the resubmitted voucher. This would be incorrect. Circular 125 provides that interest begins to accumulate on the due date. Part 9. If the resubmitted vouchers are not to be burdened with the "disputed" character of the first set of

pursuant to 41 U.S.C. § 611 from May 9, 1989.[6]

___

vouchers, it follows that they should be treated in all respects as new claims and that a new due date would be set.

**6.** Under the joint operation of the CDA and the Prompt Payment Act, interest does not accumu-

late simultaneously under the two acts. Interest under the latter act runs so long as a claim has not been made under the CDA. Circular 125 Part 9.