**PCL CONSTRUCTION SERVICES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Nos. 95–666C, 96–442C.

United States Court of Federal Claims.

Nov. 14, 2008.

Herbert L. Fenster, McKenna Long & Aldridge LLP, Denver, Colorado, for the plaintiff.

Leslie C. Ohta, Brian S. Smith, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With them was

Jeanne E. Davidson, Director, Commercial Litigation Branch.

## ORDER

HORN, Judge.

## FINDINGS OF FACT

This opinion (*PCL VI*) is one in a long series of opinions regarding multiple cases and claims filed by plaintiff. This opinion addresses the claim by PCL Construction Services, Inc. (PCL) that it is entitled to interest pursuant to the Prompt Payment Act, 31 U.S.C. § 3901 et seq. (1994), and the Post–Judgment Interest Statute, 28 U.S.C. § 1961 (1994), regarding funds previously retained by the United States Department of the Interior, Bureau of Reclamation (USBR) and subsequently awarded to PCL by this court in an earlier opinion. *See PCL Constr. Servs., Inc. v. United States,* 53 Fed.Cl. 479 (2002) (*PCL III* ).[1] The facts underlying the PCL construction contract with the USBR are fully articulated in the earlier United States Court of Federal Claims opinions, *PCL Construction Services, Inc. v. United States,* 41 Fed.Cl. 242 (1998) (*PCL I* ); *PCL Construction Services, Inc. v. United States,* 47 Fed.Cl. 745 (2000) (*PCL II* ); *PCL Construction Services, Inc. v. United States,* 53 Fed.Cl. 479 (2002) (*PCL III* ); *PCL Construction Services, Inc. v. United States,* 96 Fed.Appx. 672 (Fed.Cir.2004) (*PCL IV* ); and *PCL Construction Services, Inc. v. United States,* 84 Fed.Cl. 408 (2008) (*PCL V* ), and are incorporated in this opinion. Certain facts pertinent to this opinion, however, are reiterated briefly below.

The USBR awarded Contract No. 1–CC–30–09050 to PCL to construct a Visitor Center and Parking Structure at the Hoover Dam. PCL submitted Invoice No. 42 to the USBR on April 24, 1995, requesting payment for work completed in March and April, 1995 on the Parking Structure and Visitor Center at the Hoover Dam. In a letter dated July 28, 1995, USBR informed PCL that it was retaining money from PCL pursuant to the contract: "Continued withholding of funds is necessary for the protection of the Government's interests in accrued liquidated damages, outstanding required submittals, and credits due the Government for changes and/or reductions in the work." The government retained $1,351,838.00 as of April 24, 1995.

In a letter dated August 4, 1995, PCL requested release of the retainage, claiming that the government was not entitled to retain the monies because the contract had been substantially performed and the government had not assessed liquidated damages against PCL. In that same August 4, 1995 letter, the plaintiff also stated: "The USBR is subject to "Prompt Payment clause provisions." " In a letter dated August 22, 1995, the USBR denied the request for release of the retainage, stating again: "As indicated in the Construction Engineer's letter to you dated July 28, 1995, continued retention of funds is necessary for the protection of the Government's interests in accrued liquidated damages and other items." PCL and the government subsequently attempted to resolve the issues without success.

On November 22, 1995, PCL submitted a certified claim to the USBR in the amount of "$1,351,838.00, plus interest," for monies retained. PCL notified USBR that PCL had "substantially completed the work required by the contract on May 11, 1995," and was entitled to the retained monies. PCL also stated it would perform no additional work related to the contract "to avoid further damages." PCL's letter of November 22, 1995, stated: "PCL will therefore perform no additional work related to the contract; and, PCL is advising its subcontractors that any work performed for the Bureau on this contract will be at their own risk."

Subsequently, PCL filed three complaints in the United States Court of Federal Claims (Case Nos. 95–666C, 96–442C and 06–144C), arising from the construction project at the Hoover Dam for the USBR. The first complaint (Case No. 95–666C) claimed

---

1. This claim by plaintiff for Prompt Payment Act and post-judgment interest was placed in abeyance pending resolution of other outstanding claims by PCL, including the claims addressed in *PCL Construction Services, Inc. v. United States,* 84 Fed.Cl. 408 (2008) (*PCL V* ).

$31,040,071.00, based upon alleged breach of contract and illegality of the contract. *See PCL I*, 41 Fed.Cl. 242 and *PCL II*, 47 Fed. Cl. 745, *aff'd, PCL IV*, 96 Fed.Appx. 672. After extensive discovery and a lengthy trial, the court issued an opinion denying PCL's alleged breach of contract, and finding that the incomplete portion of the contract was properly terminated for default. *See PCL II*, 47 Fed.Cl. 745.[2]

The second complaint (Case No. 96–442C) demanded the monies retained by USBR, stating: "PCL is entitled to recover $1,351,838 for the breach of the Contract due to the illegally withheld retainage, *plus CDA* [Contract Disputes Act, 41 U.S.C. § 601 et seq. (1994) ] *interest."* (emphasis added). In *PCL III,* the court found in favor of PCL in the amount of "$1,351,838.00 plus interest," for improperly withheld retainage. *See PCL III*, 53 Fed.Cl. 479; *see also* Order, Case Nos. 95–666C, 96–442C, at 2 (Dec. 19, 2002) (unpub.) (directing entry of judgment). In *PCL III,* the court found that based on the inability of the parties to establish a clear apportionment of delays and responsibility for incomplete work, the retained money should be released to PCL. *Id.* at 492–93. The court concluded that both parties appeared to have shared responsibility for the delays to some degree. *PCL III,* 53 Fed.Cl. at 484–92. As to whether there was incomplete work, the court upheld the USBR's termination for default based on the existence of incomplete work: "The plaintiff also asked the court to set aside the government's termination for default. The court finds that the separable, incomplete portion of the contract was subject to a proper termination for default." *PCL II,* 47 Fed.Cl. at 812. On December 30, 2002, PCL was awarded the $1,351,838.00 in retainage, plus interest, by the court.

In its third complaint, Case No. 06–144C, PCL attempted to revisit the issues surrounding contract performance, alleging entitlement to monies for delays and contract changes, rather than relying on the breach of contract theory resolved in *PCL II,* 47 Fed.

Cl. 745. The court dismissed the complaint, finding that the same claims could have been brought in the breach of contract complaint which was resolved in the breach of contract trial opinion, *PCL II,* 47 Fed.Cl. 745, and, thus, applied the doctrine of *res judicata. See PCL V,* 84 Fed.Cl. 408.

Following issuance of the opinion in *PCL III* on retainage, the United States Department of Justice sent a July 7, 2003 letter to the Judgment Fund Branch of the United States Department of the Treasury, certifying the award of the retained monies in the amount of $1,351,838.00, "plus CDA interest," to PCL. PCL received the monies in the form of a check dated September 12, 2003, in the amount of $1,984,690.09, including $632,852.09 in CDA interest.

On October 2, 2003, PCL sent a letter to the Department of the Treasury, requesting payment of an additional $45,131.70. PCL claimed that, although it had been paid $1,984,690.09, according to its calculations, the government still owed PCL $45,131.70. PCL claimed $44,027.33 in Prompt Payment Act interest from May 24, 1995 to November 22, 1995; $591,993.93 in CDA interest from the date of the certified claim until payment, and $41,962.53 in post-judgment interest, for total interest of $677,983.79, plus the retainage principal of $1,351,838.00, for a total of $2,029,821.79 due. Since PCL had been paid $1,984,690.09 by the government, PCL claimed $45,131.70 as the difference between the two figures ($2,029,821.79 minus $1,984,690.09).

The Financial Management Service, United States Department of the Treasury, responded in a letter to PCL dated November 14, 2003, stating that the calculation of interest on the judgment was based on the CDA interest for the total amount of the judgment and that the interest covered the period from November 22, 1995, when PCL filed its CDA certified claim with the USBR contracting officer for the retained amount, through September 11, 2003, the anticipated payment date. Treasury indicated to PCL that the file information did not support interest pay-

---

**2.** The court also issued an earlier opinion in Case No. 95–666C, denying plaintiff's claim that the USBR contract was illegal based on violations of the Anti–Deficiency Act. *See PCL I,* 41 Fed.Cl. 242, *aff'd, PCL IV,* 96 Fed.Appx. 672.

ments under the Prompt Payment Act or the Post–Judgment Interest Statute.

In its motion to compel payment of interest under review in this order, PCL claims that, pursuant to this court's judgment awarding $1,351,838.00, plus interest, to PCL, Prompt Payment Act interest should have been included from May 24, 1995, the date PCL submitted its retainage invoice (April 24, 1995), plus thirty days,[3] to the date PCL filed its CDA claim for retainage with the contracting officer (November 22, 1995). In addition to Prompt Payment Act interest, PCL also claims that it should be paid "additional interest under the Post Judgment Statute, 28 U.S.C. § 1961 (1994) relating to the delay of the PPA interest payment after the order of the Judgment." The government disputes PCL's claim, stating that PCL's motion should be denied because PCL did not "pursue an identifiable claim for Prompt Payment Act interest, because this Court did not expressly award PCL Prompt Payment Act interest, and because PCL's contract expressly prohibited this kind of interest payment. . . ."

## DISCUSSION

■ At issue is whether PCL is entitled to interest under the Prompt Payment Act and the Post–Judgment Interest Statute. The time period at issue is from May 24, 1995, thirty days after the submission of PCL's Invoice No. 42 to the Bureau of Reclamation seeking release of the retainage, until the filling of PCL's certified claim with the USBR's contracting officer on November 22, 1995, pursuant to the CDA, 41 U.S.C. § 605(a), which initiated the time period for entitlement to CDA interest. Also at issue is whether PCL is entitled to any post-judgment interest if PCL is entitled to Prompt Payment Act interest.

The government argues that because PCL did not specifically request interest under the Prompt Payment Act, such interest should not be awarded. PCL's certified claim to the

contracting officer for retainage sought "$1,351,838, plus interest," without citation to the Prompt Payment Act. Plaintiff's complaint in the retainage case, Case no. 96–442C, similarly made no reference to Prompt Payment Act interest, and the complaint even requested CDA interest explicitly: "PCL is entitled to recover $1,351,838 for the breach of the Contract due to the illegally withheld retainage, *plus CDA interest.*" (emphasis added). The court's judgment awarded PCL "$1,351,838.00, plus interest." The government states that, without an express request for and award of Prompt Payment Act interest, the government treated PCL's award "as we would any other award worded as such—and authorized the Department of the Treasury to make payment of Contract Disputes Act interest to PCL."

Plaintiff contends that there is no requirement for a contractor to specify the type of interest sought. The court agrees. The Prompt Payment Act itself provides that: "A business concern shall be entitled to an interest penalty of $1.00 or more which is owed such business concern under this section, and such penalty shall be paid without regard to whether the business concern has requested payment of such penalty." 31 U.S.C. § 3902(c)(1); *see also* 48 C.F.R § 52.232–27(a)(3) (Oct.1990) (Prompt Payment for Construction Contracts clause (April 1989)) ("An interest penalty shall be paid automatically by the designated payment office, without request from the Contractor, if payment is not made by the due date. . . ."); *Sarang Corp. v. United States,* 76 Fed.Cl. 560, 563 (2007) ("PPA interest, however, may be awarded, even if the contractor does not specifically request it from the contracting officer."); *GPA–I, LP v. United States,* 46 Fed.Cl. 762, 772 (2000). Moreover, although in plaintiff's certified claim and retainage reimbursement complaint filed with this court, PCL did not specifically request Prompt Payment Act interest, plaintiff did request the court to "award to PCL such

3. Prompt Payment Act interest was not raised in the plaintiff's complaint demanding return of the retainage resolved in *PCL III.* In its brief more recently filed with this court, plaintiff agrees that the Prompt Payment Act provides a thirty-day grace period for payment to be made after the

submission of an invoice, *see* 31 U.S.C. § 3903(a)(1)(B) (1994); 48 C.F.R. § 52.232–27(a)(1)(i)(B), (a)(1)(ii)(A) (Prompt Payment for Construction Contracts Clause (April 1989)), making the starting date for any Prompt Payment Act claim by plaintiff May 24, 1995.

other and further relief as the Court deems appropriate." Also, in correspondence with the USBR, including, plaintiff's August 4, 1995 letter to the USBR contracting officer, the plaintiff stated: "The USBR is subject to prompt payment clause provisions." Regardless, if entitled to the interest, PCL was not required to cite to the Prompt Payment Act specifically in its complaint filed with this court.

■ Defendant, arguing that PCL was not entitled to Prompt Payment Act interest, next cites clauses in PCL's construction contract with the USBR. The first, titled "Prompt Payment for Construction Contracts (April 1989)," is found in subsection (a)(4)(iv) of the contract clause, and states, in pertinent part:

> (iv) Interest penalties are not required on payment delays due to disagreement between the Government and Contractor over the payment amount or other issues involving contract compliance, or *on amounts temporarily withheld or retained in accordance with the terms of the contract.* Claims involving disputes, and any interest that may be payable, will be resolved in accordance with the clause at 52.233–1 Disputes.

48 C.F.R. § 52.232–27(a)(4)(iv).

The court's prior opinion in *PCL III* addressed the retainage clause in the contract between PCL and the USBR:

> Plaintiff asserts that it is entitled to all amounts retained by the Bureau for warranty, credit and incomplete punch-list items. The United States Court of Appeals for the Federal Circuit has held that the government has "considerable leeway" with regard to administration of its contracts, including retention of contract payments based on contractual provisions. *See Fireman's Fund Ins. Co. v. United States,* 909 F.2d 495, 498 (Fed.Cir.), *reh'g denied* (Fed.Cir.1990). The "retainage clause" of the contract at issue states:
>
> > When the work is substantially complete, the Contracting Officer may retain from previously withheld funds and further progress payments that amount the Contracting Officer considers adequate for protection of the Government and shall release to the Contractor all the remaining withheld funds. Also, on completion and acceptance of each separate building, public work, or other division of the contract, for which the price is stated separately in the contract, payment shall be made for the completed work without retention of a percentage.
>
> > * * *
>
> While the defendant has introduced into evidence numerous punch-list items and additional evidence of remaining work the government asserts PCL failed to perform prior to leaving the contract site, the government has never assigned costs to those items.

*PCL III,* 53 Fed.Cl. at 492.

In *PCL III,* the court concluded that, as to the incomplete work, a breakdown of costs was necessary to substantiate the government's retainage or to make a downward adjustment on what was owed plaintiff on the submitted invoice. Absent such evidence, defendant must release the incomplete work portion of the retainage. *Id.* at 492–93. As to whether there was incomplete work, the court upheld USBR's termination for default based on incomplete work, stating: "The plaintiff also asked the court to set aside the government's termination for default. The court finds that the separable, incomplete portion of the contract was subject to a proper termination for default." *PCL II,* 47 Fed. Cl. at 812. Regarding USBR's retainage based on liquidated damages for project delay, the court concluded that both parties appeared to have shared responsibility for delay to some degree, but that neither party was able to provide competent evidence at trial which would permit the court to make a clear apportionment of the delay between them. *PCL III,* 53 Fed.Cl. at 484–92.

Thus, given the discretion afforded to the government to order retainage in the event of incomplete and delayed work, although the government was not ultimately successful on withholding the retainage, the record contains sufficient evidence of incomplete work and delays on the part of PCL to reasonably justify USBR's prophylactic action of causing monies to be "temporarily

606

withheld" as protection of the government's interests. *See Johnson v. All–State Constr., Inc.,* 329 F.3d 848, 854 (Fed.Cir.2003) ("One purpose of contract 'retainage is [as] an incentive to complete the contract.' Retainage rights also serve to protect the interests of the government against potential defaults by the contractor. No proof is required that the contractor has committed a breach of the contract, as the withholding is permitted to secure against possible further breaches or undiscovered prior breaches." (quoting *Fireman's Fund Ins. Co. v. United States,* 909 F.2d at 498 (brackets in original; other citations omitted))); *Nat'l Surety Corp. v. United States,* 118 F.3d 1542, 1545 (Fed.Cir.1997) (retainage provisions in a construction contract serve to protect the government and the surety); *Grot, Inc. v. United States,* No. 03–1951C, 2007 WL 5161749, at *14 (Fed.Cl. Oct.5, 2007) (retainage protects the interests of the government).

In its August 28, 2002 opinion, *PCL III,* 53 Fed.Cl. 479, the court found in favor of PCL on the retainage, but did not conclude that the government was without a reasonable basis for the retainage in the furtherance of its interests. Rather, this court's decision was based on insufficient evidence to allocate responsibility for delay and incomplete work between PCL and USBR, resulting in insufficient evidence to definitize any adjustment to the retainage dollars withheld. *Id.* at 493. PCL is not entitled to Prompt Payment Act interest because the monies sought by PCL, although ultimately recovered, were retained by the USBR in accordance with the terms of the contract. This court's December 19, 2002 award in the amount of $1,351,838.00, plus interest, for the improperly withheld retainage, entitled PCL to CDA interest, beginning with the date it filed a certified claim with the contracting officer. *See* Order, Nos. 95–666C, 96–442C, at 2 (Dec. 19, 2002) (unpub.).

Defendant also argues a second basis for the conclusion that PCL is not entitled to Prompt Payment Act interest. While the text of the clause titled "Prompt Payment for Construction Contracts," in subsection (a)(4)(iv), quoted above, offers protection to the government from interest penalties re-

garding funds retained in accordance with clauses in the contract such as the "retainage clause," quoted above, the Prompt Payment clause also excludes interest penalties for amounts that are withheld due to a "disagreement" or a "dispute" between the parties. To repeat, the Prompt Payment for Construction Contracts clause (April 1989) states:

> (iv) Interest penalties are not required on payment delays due to *disagreement* between the Government and Contractor over the payment amount or other issues involving contract compliance, or on amounts temporarily withheld or retained in accordance with the terms of the contract. Claims involving *disputes,* and any interest that may be payable, will be resolved in accordance with the clause at 52.233–1 Disputes.

48 C.F.R. § 52.232–27(a)(4)(iv) (emphasis added).

The United States Court of Federal Claims and numerous Boards of Contract Appeals have acknowledged that the Prompt Payment Act applies only in cases in which no disagreement exists over the claim. *See George Sollitt Constr. Co. v. United States,* 64 Fed.Cl. 229, 304 (2005) ("Disputed contract payment amounts are subject to Contract Disputes Act interest, 41 U.S.C. § 611, not Prompt Payment Act interest."); *Cargo Carriers, Inc. v. United States,* 34 Fed.Cl. 634, 645 (1995) (holding that there was no waiver of sovereign immunity to allow Prompt Payment Act interest when nonpayment by the agency is the result of a dispute with the business concern), aff'd, 135 F.3d 775 (Fed.Cir.1998) (table); *MCI Worldcom Commc'ns, Inc. v. Soc. Sec. Admin.,* GSBCA No. 16169–SSA, 04–2 BCA ¶ 32,689, at 161,-761 (Aug. 4, 2004) (holding that, "as a matter of law, any claim for PPA interest on the disputed amount from the date of partial payment to the date on which the contracting officer received MCI's certified claim of April 4, 2003, must be denied ...."), *appeal dismissed sub nom. Barnhart v. MCI Worldcom Commc'ns, Inc.,* 120 Fed.Appx. 321 (Fed.Cir.2005); *Marut Testing & Inspection Servs., Inc. v. Gen. Servs. Admin.,* GSBCA No. 15,412, 02–2 BCA ¶ 31,945, at 157,824

(Aug. 2, 2002) (holding that because the payment amount was in disagreement, Prompt Payment Act interest did not run upon receipt of the payment request, and awarding CDA interest from the date the contractor filed its certified CDA claim with the contracting officer), *appeal dismissed,* 66 Fed. Appx. 886 (Fed.Cir.2003).

In *Laurelwood Homes,* the court noted:

Several other judges of this court have acknowledged that the PPA is not applicable when there is a dispute over the payment in question. *E.g., Southern Comfort Builders, Inc. v. United States,* 67 Fed.Cl. 124, 156 (2005). Similarly, this Court adopts the rationale that interest is only available when Government payments are "inadvertently late, and not when the Government refuses to pay or questions its underlying liability." *Inversa, S.A. v. United States,* 73 Fed.Cl. 245, 247 (2006); *see also George Sollitt Constr. Co. v. United States,* 64 Fed.Cl. 229, 304 (2005).

*Laurelwood Homes LLC v. United States,* 78 Fed.Cl. 290, 292–93 (2007).

In the instant case, disagreement between the parties as to the amounts owed to PCL and the state of completion of contract work was clear from evidence produced at the trial. With regard to Invoice No. 42 (and No. 43), that disagreement was undeniably documented when in the letter, dated July 28, 1995, the USBR rejected plaintiff's claim for payment and withheld the retainage amount.[4] If not before, the disagreement ripened into a dispute for the purposes of CDA interest when the claim was submitted to the contracting officer on November 22, 1995.

PCL, however, argues in its brief that the disagreement was unfounded, and that the government improperly contested its invoice, such that Prompt Payment Act interest is still due:

If the government is allowed to assert an unfounded dispute at any time, no matter how uncertain or indefinite, then the government may *always* avoid payment of

interest under the PPA. This could effectively render the PPA meaningless. *See ReCon Paving, Inc. v. United States,* 745 F.2d 34 (Fed.Cir.1984) (payment of interest is remedial in nature, meant to compensate a contractor for costs of money associated with financing additional or disputed work while pursuing an administrative remedy, and is also designed to encourage prompt consideration by contracting officer of contractor's request for payment).

(emphasis in original). Consequently, plaintiff asserts that: "The Government should not be allowed to force a 'dispute' to avoid its obligations under the PPA."

Plaintiff's reliance on *ReCon Paving* is not relevant to the issue of interest penalties under the Prompt Payment Act, as that case was limited to interest penalties under the CDA: "Our decision here is consistent with the basic purposes of the interest provision of the CDA." *ReCon Paving, Inc. v. United States,* 745 F.2d at 41. Furthermore, contrary to PCL's assertion in the case before this court, the government's retainage was found to be legitimate, even though defendant was unable to establish a dollar value for the retainage because it could not allocate causation and responsibility between plaintiff and defendant. The retainage in the present case stemmed directly from on-going disagreements and disputes over performance delays and deficiency items between PCL and USBR. *See George Sollitt Constr. Co. v. United States,* 64 Fed.Cl. at 304 ("[A]ny retention due to delays in contract performance also evidences a dispute between the parties as to when the Navy was liable for certain portions of Sollitt's monthly invoices.").

In support of its proposition that the government merely created a dispute to avoid Prompt Payment Act interest, PCL also cites *Arkansas Best Freight System, Inc. v. United States,* 20 Cl.Ct. 776 (1990). The court in *Arkansas Best Freight System* concluded that Prompt Payment Interest was due the plaintiff in that case, but the facts and circumstances in *Arkansas Best Freight System*

---

4. The court notes that in its July 28, 1995 letter, the USBR indicated the retainage was not released under Invoice No. 43.

are distinguishable from the present case, and are very telling in the distinction. In *Arkansas Best Freight System*, there was no dispute and, therefore, no reason not to pay the plaintiff's invoice. The defendant itself stated in its brief that "there existed no bona fide dispute when the invoices were submitted." *Id.* at 778. In fact, the contractor's invoices had been paid in full by the government. *Id.* Thus, in contrast with the present case, there was virtually no dispute or disagreement between the parties in *Arkansas Best Freight System.* The court in *Arkansas Best Freight System* also cited to the legislative history of the Prompt Payment Act, emphasizing this requirement for a bona fide dispute or disagreement:

> Provision of this [Prompt Payment] Act providing for the payment of interest penalties on overdue bills are not applicable when there is a dispute between a Federal agency and a business concern over the terms and/or manner of compliance with a contract. The Committee intends that any question concerning the amount of an invoice or the performance of a contract be raised in good faith, in order to establish a bona fide dispute between the agency and the business concern involved.

*Id.* at 778 n. 2 (quoting H.R.Rep. No. 461, 97th Cong., 2d Sess. 14, *reprinted in* 1982 U.S.Code Cong. & Ad. News 111, 125) (brackets added). The *Arkansas Best Freight System* opinion also cited to the legislative history of the 1988 amendments to the Prompt Payment Act, for the same point:

> The [Prompt Payment] Act's protections apply only when there is no dispute relating to a contractor's performance in accordance with the terms and conditions of the contract. If a dispute exists, a contractor is not entitled to payment or late payment interest penalties until the dispute is resolved.

*Id.* at 779 (quoting H.R.Rep. No. 784, 100th Cong., 2d Sess. 11, *reprinted in* 1988 U.S.Code Cong. & Ad. News 3036, 3039) (brackets added).

In *Arkansas Best Freight System*, there was no dispute or disagreement and the government owed the contractor Prompt Payment Act interest. In contrast, in *MCI Worldcom Communications*, as in the present case, there was a dispute or disagreement. The contractor prevailed, but due to the disagreement between the parties, although the General Services Board of Contract Appeals found that the contractor's interpretation was the correct one and that the government should have made the full payment requested in the contractor's invoice, the Board held that no Prompt Payment Act interest was due to the contractor. *MCI Worldcom Commc'ns Inc. v. Soc. Sec. Admin.*, GSBCA No. 16169–SSA, 04–2 BCA ¶ 32,689, at 161,760 (Aug. 4, 2004). In *MCI Worldcom Communications*, the contractor submitted an invoice which *Id.* The Board found

> The Government's refusal to pay the entire amount requested, once payment was due, however, is sure evidence of a dispute regarding payment of the invoice previously submitted. Based on this fact alone, therefore, we conclude that, as a matter of law, any claim for PPA interest on the disputed amount from the date of partial payment [of the invoice] to the date on which the contracting officer received MCI's certified claim of April 4, 2003, must be denied.

*Id.* at 161,761.

CDA interest was awarded by the Board in the *MCI Worldcom Communications* case "from the date the contracting officer received MCI's certified claim of April 4, 2003." *Id.* Similarly, in the present case, due to the dispute or disagreement between the parties, which led to the retainage by USBR in the first place, Prompt Payment Act interest is not due PCL. Instead, this court's previous award of retainage properly entitled PCL to CDA interest, which the government has acknowledged and paid.

Finally, PCL also requested interest under the Post–Judgment Interest Statute, 28 U.S.C. § 1961, "for the delay of the PPA [Prompt Payment Act] interest payment...." Because the court has determined that PCL is not entitled to interest under the Prompt Payment Act, the court does not reach the issue of post-judgment interest on unpaid Prompt Payment Act interest.

## CONCLUSION

For the foregoing reasons, PCL's motion to compel payment of Prompt Payment Act interest and post-judgment interest is denied.

**IT IS SO ORDERED.**